## MARY S. CARPENTER *vs.* AMASA HOLCOMB.

H. and C. entered into a contract for the conveyance by C. of a farm, by warranty deed and free from incumbrances, in consideration of $7000 to be paid by H. on or before a certain day; and H. paid $100 on account of the purchase money. S. held a mortgage of the farm for $1500; which H. knew. At the end of the stipulated time, the mortgage being overdue and unpaid, and no deed of the premises having been prepared by C., the parties had an interview, at which H. said he had not money enough to take the farm, and asked if the mortgage could be permitted to lie on it, and C. replied that he desired to pay off the mortgage so as to give a clear title, and that S. wanted his money where-

upon H. refused to take the farm, and gave no reason for his refusal, but offered to give up the $100 he had paid, if the contract should be abandoned by mutual consent. *Held,* that a jury would be warranted in finding, on these facts, taken in connection with the known and usual mode of transacting such business, that H. refused to perform the contract on his own part, and waived his right to require performance, or further tender of performance, on the part of C.

CONTRACT on a bond executed by the defendant to the plaintiff, under date of November 27, 1868, in the penal sum of $1500, the condition of the obligation being "that whereas the obligor has this day agreed to pay to the obligee the sum of $7000 on or before April 1, 1869, and on the conveyance to him, the said obligor, or his legal representatives or assigns, by said obligee and her husband, of her certain farm of land in West Sutton known as the Spurr farm, being the land conveyed to said obligee by the administrator of the estate of John Spurr, such conveyance to be made by warranty deed, in fee simple, on April 1, 1869, and on payment of said sum; now should the obligor, his legal representatives or assigns, pay said sum of $7000 on or before said April 1, 1869, and on the execution of such deed, then this bond shall be void," &c. Writ dated April 2, 1869.

The declaration alleged that the plaintiff had always been ready and willing to perform her part of the contract which was the subject of the bond, but that the defendant refused to accept the deed of the land and pay the purchase money, whereby the condition of the bond was broken.

The answer denied that the plaintiff on April 1, 1869, or at any time before action brought, either offered with her husband to give the defendant a warranty deed of the farm in fee simple, or was ready or able to execute such a deed to him, inasmuch as the farm was incumbered with a mortgage to the amount of more than $1500, and the plaintiff could give no clear title; and set up that, as a part of the contract, in connection with the bond in suit, another bond of like date and in like penal sum was executed by the plaintiff and her husband to the defendant, the condition thereof being "that whereas the obligors have this day agreed to execute a good warranty deed, in fee simple, conveying to said Holcomb, and his heirs and assigns, a farm in West Sutton, now occupied by the obligors as their home, being all the land con-

veyed to said Mary S. Carpenter by the administrator of the estate of John Spurr, and known as the Spurr farm, in consideration of $7000 to be paid by said Holcomb, his legal representatives or assigns, on or before April 1, 1869, interest to be allowed on all sums paid before that date from the time of payment to said April 1, 1869; now should said obligors execute such deed, and make a full and perfect conveyance of said premises, free of all incumbrances, to said Holcomb or his assigns on April 1, 1869, and on the full payment to them, the said obligors, of said sum of $7000, then this bond shall be void," &c.

Trial in the superior court, before *Devens*, J., who made a report thereof, referring to the pleadings, and continuing as follows:

"The plaintiff proved the execution and delivery of the bond declared on, and the execution and delivery of the other bond by the plaintiff and her husband to the defendant, made at the same time and as a part of the same transaction. The contract as to the sale of the farm was made at West Sutton, but the bonds were executed, so far as the defendant is concerned, at Hartford, Connecticut. At the time of the execution of the bonds, there was a mortgage held by John Stoddard on the place for $1500, which remained unpaid and undischarged at the time of the commencement of the action. The defendant knew of this mortgage when he executed the bond declared on.

"The plaintiff called as a witness Adams Carpenter, her husband, who testified that he saw the defendant on April 1, 1869, at his house in Sutton, between six and seven o'clock in the evening. Nothing was said as to the deed that night. The defendant said, 'In the morning, do the business.' Next morning the defendant said he had not got money enough to take the farm; would pay $5000, and wanted to give a note for the rest on sixty or ninety days. I told him I wanted to take up the mortgage, so as to give a clear deed. He asked if I thought the mortgage could lie. I said, 'I don't know; Stoddard wants the money.' I went to the barn to consult with my boy whether to accept his terms. The defendant came out and said, 'Let us shift the bonds.' I said, 'Are not you going to take the farm?' He said

'No.' My wife said, 'What way is that to make a trade? You would exact the bond of me if I did not stick.' The defendant said, 'I shall not take the farm; we will shift the bonds, and I will give you in what I have paid,' which was $100. I told him we would not. He then went away. The next time I saw him was the same day at two o'clock in the afternoon at the railroad station at Worcester. Meanwhile, I had been to Worcester and obtained the writ in this action, and delivered the same to the officer. The officer with the writ was present at the station when I saw the defendant. I then said to the defendant, 'I want you to take the farm.' He said he would not. Thereupon service of the writ was made.

"In cross-examination, he testified: The farm stood in my wife's name, and I was acting as her agent. There was no deed made on April 1, 1869, to convey the farm to the defendant, nor any deed prepared either on the morning of April 2, while the defendant was at the house, or at the interview with the defendant in the afternoon, at the railroad station. We had not paid or discharged the mortgage, or procured any release from the mortgagee; and the mortgagee was not present on either occasion. No deed was ever tendered to the defendant, and none was ever made.

"The plaintiff testified as follows: The morning of April 2, at our house, the defendant said he had not money enough to pay for the farm; that perhaps they would let the old mortgage lie. Mr. Carpenter said, 'I don't know about it.' Mr. Carpenter and his son went out. Soon afterwards the defendant went out. I heard him say, 'Let us change bonds.' I said, 'You would exact the bond of me if I did not stick.' Mr. Carpenter said, 'Are not you going to take the farm?' I said, 'As soon as your money is ready we will make the deed.' He said he would not take the farm.

"Upon the foregoing evidence, the defendant asked the judge to rule that the action could not be maintained. The judge declined so to rule, and directed a *pro formâ* verdict for the plaintiff; and the case is reported for the determination of the supreme judicial court. If the court should be of the opinion that the

action can be maintained on the foregoing evidence, the verdict is to stand; otherwise, a new trial to be ordered."

*G. F. Verry & F. A. Gaskill*, for the plaintiff.

*H. B. Staples & F. P. Goulding*, for the defendant.

COLT, J. The bonds of the plaintiff and defendant were executed at the same time, and are construed together. The conveyance of the farm free of all incumbrances, and the payment therefor by the defendant, were concurrent and mutually dependent conditions. In such contracts, neither party can maintain an action for the refusal or neglect of the other to perform, without showing performance, or its equivalent, on his own part. An offer to perform by one who is ready and willing, and free from any conditions to which the other has a right to object, is sufficient; and so also may be a refusal to accept performance, even before any offer thereof, unless its effect is subsequently cured by seasonable notice of a change in purpose. The law does not require vain things, or an idle ceremony, to give the plaintiff a right of action. *Howland* v. *Leach*, 11 Pick. 151, 155. *Tinney* v. *Ashley*, 15 Pick. 546, 552. *Smith* v. *Boston & Maine Railroad*, 6 Allen, 262, 272.

In *Pomroy* v. *Gold*, 2 Met. 500, cited by the defendant, it is to be noticed that the case was submitted to the court upon an agreed statement, with authority to make the same inferences which a jury might draw from the facts stated. There was indeed, in that case, a positive declaration by the defendant that he would not perform, which under most circumstances would be held equivalent to a refusal to accept performance, if offered by the other party; yet, under the peculiar circumstances, it was there held, that the jury would be warranted in finding that the refusal was no waiver of the right to require performance or an offer of performance from the plaintiff. *North* v. *Pepper*, 21 Wend. 636. *Franchot* v. *Leach*, 5 Cowen, 506.

By the terms of this report, the verdict for the plaintiff is to stand if the action can be maintained; and applying these rules of law to the facts and the evidence here reported, a majority of the court are of opinion that it can be maintained. Upon this reservation we are not to decide any question of fact, but only

the question of law, whether there is evidence upon which the issue of fact might be found for the plaintiff by the jury.

Upon the last day limited by the original contract for the delivery of the deed and the payment of the money, the parties met; and there was evidence that the time for the completion of the business was extended, by an agreement originating in the suggestion of the defendant, to the next morning. In the morning, the plaintiff told the defendant, in substance, that the deed would be made as soon as the money which he was to pay was ready. This statement must be regarded, and must have been understood at the time, as an offer to convey the farm named, in the mode described in the contract, free from all incumbrances. In reply to this offer, the defendant declared that he would not take the farm, assigning no reason in that connection for his refusal, but offering to give up what had been paid by him towards the purchase money, if the bonds could be exchanged and the contract given up. At the time the contract was made, there was a mortgage upon the farm of comparatively small amount, of which the defendant then had information, and which had not been paid or discharged at the time of the plaintiff's offer. And in the further conversation which took place, the defendant asked if this mortgage, which he described as the old mortgage, could be permitted to lie on the farm, and he was told that the holder wanted his money.

The defendant insists that the plaintiff fails to show a readiness to perform, at the time of her offer, because the mortgage was not then discharged. But readiness, within the meaning of the rule, does not require full and complete preparation at the moment when the offer is made. It is not necessary that the plaintiff should come with the deed and discharge of the mortgage duly signed, sealed, stamped and ready for delivery, and with release of dower, when the contract requires such release. It is enough, where there is an unqualified refusal of the defendant shown, if the plaintiff has the ability to procure a discharge and give a good title. There was evidence here, taken in connection with the known and usual mode of transacting such business, the defendant's knowledge of the existence of the mortgage, its compara-

tively small amount, and the fact that both parties recognized that it was then due, which would justify the jury in finding that the defendant refused to accept performance, and waived his right to require performance, or further tender of performance, on the part of the plaintiff. The defendant's refusal to take a deed was unqualified and absolute, not founded upon the existence of the incumbrance, or a doubt of the plaintiff's ability to remove it if necessary. Upon this point, the defendant's offer to give up that part of the purchase money which he had already paid is significant, and inconsistent with the idea that he then relied on the insufficiency of the plaintiff's offer.

The circumstances attending the refusal, and the terms in which it was expressed, were such as to justify the jury in inferring that to procure a discharge of the mortgage, and make further proffer of it, would be but an idle ceremony, which it was intended to dispense with, thus leaving the defendant wholly at fault in not completing the contract. *Hapgood* v. *Shaw, ante,* 276.                                    *Judgment on the verdict.*