MORRIS C. MENGIS *vs.* WILLIAM G. CARSON.

At the trial of an action for the breach of a written contract to convey real estate to the
   plaintiff upon his payment of the purchase money, the defendant having declined to con-
   vey, evidence was admitted to show that the defendant, being then notified by the plain-
   tiff that he should hold him to his bargain, afterwards offered to perform the contract,
   and that the parties entered into negotiations for that purpose; and the jury were in-
   structed that if the defendant, after being apprised that he must perform the contract,
   gave notice of his intention to do so before the plaintiff had been harmed by the delay
   and if the parties then began arranging to complete it, the defendant had not been guilty
   of such a breach of the contract as would excuse the plaintiff from offering to perform it
   on his part.   *Held*, that the evidence was properly admitted, and that the plaintiff has
   no ground of exception to the instructions.

CONTRACT for a breach of the following agreement to convey real estate :

" East Cambridge, March 2, 1872. Received of M. C. Mengis ten dollars on account of purchase of three double houses and land on Pearl and Lopez Street, Cambridgeport. Price $18,000. Balance within sixty days, two thirds cash, balance on mortgage at 7%. Wm. G. Carson."

At the trial in the Superior Court, before *Brigham*, C. J., it was agreed on both sides that the mortgage referred to in the agreement was to be a second mortgage, and that the buyer was at liberty, if he saw fit, to put a first mortgage on the premises in order thereby to raise the money to make his cash payment. The plaintiff offered evidence to show his readiness, on March 2 and 4, to perform his part of the agreement ; that on the morning of March 4 he received from the defendant the following letter :

" Cambridge, March 4, 1872. Sir, Owing to opposition on the part of my wife, I shall not be able to give you a full title to the three houses on Pearl Street, and consequently I must withdraw my offer of them to you, in order that you may not be put to any unnecessary expense in looking up titles, &c. Your ten dollars returned herewith. Yours, Wm. G. Carson."

The suit was commenced in the afternoon of the same day.

The defendant offered in evidence the following letter received by him from the plaintiff, which was admitted against the plaintiff's objection. It appeared that the letter was mailed by the plaintiff, under direction of his counsel, on the morning of March 4 :

" Cambridgeport, March 4, 1872. Sir, Yours of this date has just been received. In reply I have to state that I hold you to your bargain. It is a square, fair trade, and unless you stand by it, I shall take legal proceedings against you. Upon the strength of that bargain I have entered into other transactions which will embarrass me very much, unless you do as you agree. Yours, respectfully, M. C. Mengis."

The defendant also offered testimony, also against the plaintiff's objection, tending to show that he, the defendant, employed

counsel, who, with his authority, after the date of the writ, notified the plaintiff that he was willing to deliver a deed pursuant to his agreement; that two or three different deeds were prepared, but were not satisfactory to the plaintiff; that finally, one was drawn to which he made no objection, until just before the expiration of the sixty days, when he objected that it did not purport to convey the land he had bought, but that a strip of two feet on one side of the lot was excluded from the description. It was also in evidence that at the time of the last interview about the delivery of the deed, the defendant refused to consent to take a second mortgage if the first mortgage note bore a higher rate of interest than six or seven per cent. per annum. There was no testimony that at the date of the contract any rate of interest for the first mortgage was mentioned. This evidence of the defendant was admitted to show that the breach of the contract committed by the defendant's letter of March 4 (if there were any such breach) had been waived and the contract revived and continued in force until the expiration of the sixty days.

No summons was served on the defendant until March 14, and there was a conflict of testimony as to the time when the defendant actually knew of the suit, the plaintiff contending that he and his counsel were informed of the suit soon after the date of the writ, and the defendant contending that he did not learn of it until the summons was served.

There was no evidence that the plaintiff tendered to defendant the mortgage or money called for by the contract, but there was testimony tending to show that he was provided with the money and was ready to execute and deliver the mortgage, but he contended that he had been excused from making a tender of the money or mortgage or a demand for a deed. He introduced evidence to show that the conversations and transactions after March 4, were either entered into with a view to compromise the suit, or were in the nature of negotiations for a new contract; that the minds of the parties never met, and that there was no intention on his part to waive the breach of, or to revive, the original contract, if such contract could be revived by parol, which he contended could not be done.

The plaintiff requested the court to rule, and instruct the jury as follows :

" 1. If the jury are satisfied that the defendant absolutely re-fused to perform his contract on the next business day after the contract was made, then the plaintiff was discharged from all further obligation to perform his part of it, or to be ready to perform it.

" 2. The paper sent by defendant to plaintiff on the 4th of March constituted a breach of the contract, and plaintiff could sue immediately.

" 3. The refusal on the part of the plaintiff to consent to the defendant's breach of his contract was no waiver of the breach itself.

" 4. No waiver by plaintiff of the breach would be valid except upon a new consideration.

" 5. Any number of negotiations for a new contract would not be sufficient to show any waiver of the breach of the original con-tract.

" 6. At all events, if defendant could by a tender after breach place himself in the same position as before breach, such tender must be not only of a deed but also of costs of suit already in curred.

" 7. Any conversation after suit brought which related to the settlement of a suit cannot affect the rights of the parties.

" 8. If in any case of mutual and dependent promises, it is competent to offer evidence of a tender of performance of a con-tract after breach and in favor of a party who has already com-mitted a breach of it, such evidence is only competent in mitiga-tion of damages.

" 9. To be competent even for that purpose, the tender must be of a performance exactly in conformity to the terms of the agreement, and must be made not merely within the time limited in the original contract, but also so seasonably as to enable the other party, who has been before notified of the breach, to place himself again in a condition of readiness.

" 10. In case of an agreement of sale and purchase of real estate and of a renunciation of the agreement on the part of the

seller, of which a written notification is made to the buyer, the contract is at an end, and there can be no revival of the contract except by some new agreement, which agreement must be in writing signed by the party to be bound thereby."

The prayers numbered from 1 to 6 were refused; those numbered from 7 to 10 were given, coupled however, with the following instructions: " If the plaintiff, on receiving the defendant's letter of March 4, immediately wrote to the defendant the letter of March 4, and in that letter the plaintiff in effect informed the defendant that he should hold him to his contract to convey the land in question according to the terms of the contract, and gave him the alternative of fulfilling the contract, or a suit upon the contract, and thereupon the defendant gave the plaintiff reasonable notice of his intention to fulfil the contract, (such notice would have been reasonable if given before the delay in giving it had practically affected the plaintiff to his injury in his resources, means or arrangements for fulfilling the contract,) and thereupon the parties proceeded to arrange together for carrying into effect the original contract, there was no breach of the contract by the defendant on March 4 which would excuse the plaintiff from offering to fulfil his obligation under the contract. If the jury find that there was a breach of the contract on the 4th of March, they may find for the plaintiff; if no breach of the contract on the 4th of March, in view of the conduct of and communication between the parties on that day and subsequently, the jury will find for the defendant. If the negotiations between the parties after March 4th related to a new contract, such negotiations would not warrant the inference by the jury of the waiver of any conduct of the defendant in the nature of a breach of the original contract; especially if such negotiations related to a compromise of the plaintiff's suit. But if the plaintiff's suit was not known or disclosed to the defendant, that fact would tend to prove that the defendant was not negotiating with reference to the compromise of that suit."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*T. P. Proctor & W. W. Warren,* for the plaintiff.

*W. B. Gale & J. W. Reed,* for the defendant.

COLT, J.   This action is upon a written contract to convey real estate upon payment of the principal part of the purchase money within a limited time, with security by second mortgage for the balance.

There was no tender of the purchase money or of the mortgage by the plaintiff before suit brought.   And the right to recover for the alleged failure of the defendant to perform was at the trial put on the ground that the defendant had renounced the contract and waived the plaintiff's allegation to perform or to offer to perform his part of the agreement.

The plaintiff relied on the defendant's letter, written the day after the agreement was entered into, in which he stated that he was unable to give a full title and must withdraw his offer, to meet which there was evidence that the plaintiff at once replied that he should hold defendant to his bargain, and that afterwards, before the defendant knew of the commencement of this action, within a reasonable time, upon notice that the defendant was willing to deliver a deed pursuant to his original agreement, the parties resumed negotiations, and, before the expiration of the time limited by the contract, a deed was prepared ready for delivery, which the plaintiff objected to as insufficient in the quantity of land described.

Upon this state of the case we see no error in the instructions given, the evidence admitted, or the refusal to rule as requested, upon the point that there had been a breach of the contract by the defendant which excused the plaintiff's performance of it. The instructions were at least sufficiently favorable to the plaintiff.

Where the question is as to the performance of a contract required by the statute to be in writing, evidence of the subsequent conduct or written and oral declaration of the parties is admissible to affect that question.   Such evidence is competent on the question whether the defendant has or has not released the plaintiff from the performance of concurrent and dependent stipulations.   It was so admitted here, and taking all the instructions together, as applied to all the evidence, it is plain that the jury must have found that there was no breach or renunciation of this

contract recognized by the plaintiff, such as would excuse the plaintiff from his part of its performance. The evidence reported warranted this finding. A refusal to accept performance even before any offer thereof, distinctly made with the purpose and intention of dispensing with an offer, would ordinarily be a sufficient waiver, if not subsequently cured by seasonable notice of a change of purpose. *Carpenter* v. *Holcomb*, 105 Mass. 280. So, if the defendant has voluntarily disabled himself to perform, as by a conveyance of the estate to a third person. *Newcomb* v. *Brackett*, 16 Mass. 161. The law does not require an idle ceremony in such cases. On the other hand, a mere declaration of unwillingness which shows only a passing intention on the part of the defendant of which he may repent, and which does not amount to an assurance that the other party is relieved from the part required of him, has been held not to be sufficient. *Pomroy* v. *Gold*, 2 Met. 500.          *Exceptions overruled.*