JAMES GALVIN *vs.* DENNIS COLLINS.

Suffolk. March 16. — April 19, 1880. AMES & LORD, JJ., absent.

A misdescription of the courses of the boundary lines in a deed of land to the grantor of a vendor will not justify a purchaser in refusing to accept a deed, and enable him to recover back the part of the purchase money already paid, if the monuments referred to so clearly identify the land that the courses may be rejected as erroneous, or where the vendor's grantor had been in exclusive possession of the land for more than twenty years.

A mortgage on the estate of a vendor of land will not justify the purchaser in refusing to accept the deed, and enable him to recover back the part of the purchase money already paid, if the vendor at the time is able and willing to have the mortgage-discharged.

CONTRACT to recover back $200, paid on account of the pur chase money, which was $4050, of a parcel of real estate, sold by auction to the plaintiff.

At the trial in the Superior Court, before *Gardner*, J., it appeared that the plaintiff signed the written conditions of the sale, the material parts of which were as follows: " $2000 to be paid in cash on delivery of deed; balance of the purchase money may remain on mortgage, power of sale, with interest at eight per cent per annum, payable semiannually; or all cash may be paid, if desired. Conveyance to be made on or before Oct. 10, 1874, by good and sufficient deed of warranty; $200 to be paid at the sale to bind the bargain and form part of the purchase money."

On the evidence in the case, which appears in the opinion, the judge, neither party desiring to go to the jury, directed a verdict for the defendant, and reported the case for the determination of this court. If, upon the evidence. the plaintiff was

entitled to recover, judgment was to be entered for him for $200 and interest; otherwise, judgment on the verdict.

*C. F. Donnelly & J. W. O'Brien*, for the plaintiff.

*J. C. Crowley & J. A. Maxwell*, for the defendant.

MORTON, J. The plaintiff can maintain this action only by showing a readiness on his part, and a refusal or inability on the part of the defendant, to perform the contract.

It appeared at the trial that, before the day when the deed was to be delivered, the plaintiff refused to perform the contract on his part. Regarding the evidence in the view most favorable to the plaintiff, he put his refusal upon two grounds. The first was that there was a misdescription of the lot of land in the deed from Jonathan Hunnewell to Thomas Cains, dated June 25, 1817, which formed part of the defendant's claim of title. There are two answers to this objection. In the deed from Hunnewell, the lot conveyed is described as follows : " Beginning at the northwesterly corner of Second and B Streets, running southwesterly on Second Street eighty-two feet six inches, then turning and running at right angles one hundred feet on land belonging to Thomas Perkins to a twenty-foot passageway, then turning and running on said passageway eighty-two feet six inches to B Street, then turning and running on said B Street one hundred feet to the point of beginning." Upon applying this description to the land, it is seen that there is a palpable and self-evident error in the use of the words " northwesterly " and " southwesterly." It is impossible to begin at the " northwesterly corner of Second and B Streets," and run " southwesterly on Second Street." If we reject these two words as erroneous, the deed furnishes a description which can be accurately applied to the land. Beginning at the corner of Second and B Streets, we run on Second Street to land of Thomas Perkins, which furnishes a fixed monument; then turning at right angles and running on Perkins's land to a twenty-foot passageway now called Bolton Street, another monument; then turning and running on Bolton Street to the corner of Bolton and B Streets, a third monument; and then on B Street to the point of beginning. This gives a rectangular lot of land, having Second Street, Perkins's land, Bolton Street, and B Street for its boundaries. A glance at the plan used at the trial, and made

part of the report, shows that there can be no mistake as to what lot was intended. No other lot can answer the description. We are of opinion, therefore, that the description is so certain by reason of the fixed monuments as to justify the rejection of the words " northwesterly " and " southwesterly " as erroneously and inadvertently used. It follows that the misdescription is immaterial, and that, notwithstanding it, the defendant had a good title.

There is another conclusive answer to this objection of the plaintiff. The deed from Hunnewell to Cains is dated in 1817. It appeared at the trial, and was not disputed, that Cains, whose title the defendant has, then entered into open, exclusive and adverse possession of the land, and continued such possession without interruption until his death in 1865. This clearly gave him a title by prescription, and, in this view, the misdescription is immaterial.

The other ground upon which the plaintiff refused to perform the contract was that there was an incumbrance upon the premises. The plaintiff having made the specific objection to performing the contract that there was a misdescription in the deed to Cains, and persisting in this objection, the defendant was not required to go through the useless ceremony of discharging the mortgage and tendering to the plaintiff a deed which he had notified the defendant would not be accepted. *Gerrish* v. *Norris,* 9 Cush. 167. *Carpenter* v. *Holcomb,* 105 Mass. 280. *Curtis* v. *Aspinwall,* 114 Mass. 187.

The only outstanding mortgage was one in favor of Daniel L. Bradford, who testified that he had agreed with the defendant to discharge it at any time upon payment of the amount secured by it. This testimony was competent to show the defendant's ability to discharge the incumbrance if the plaintiff would waive the objection of the misdescription in the deed. There was sufficient evidence in the case to show the defendant's ability and readiness to perform the contract on his part.

The plaintiff had the right to go to the jury upon this point, but he waived this right, and agreed that a verdict should be ordered for the defendant, which was to stand, unless this court should be of opinion that, upon the evidence, a verdict should have been rendered for the plaintiff. We are of opinion that

the jury would have been justified in finding, if not required to find, a verdict for the defendant; and therefore, according to the terms of the report, there must be

*Judgment on the verdict.*