NATHANIEL B. MANSFIELD *vs.* BENJAMIN E. HODGDON & others.

Suffolk. March 23, 1888. — June 21, 1888.

Present : MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Covenant to sell Land — Specific Performance — Waiver — Tender — Notice — Dower.*

If the owner of land makes a covenant, his wife not joining, to sell it, and, after preventing the covenantee, who seasonably elects to take it, from tendering the purchase money, conveys it to another, who has notice of the covenantee's rights, and to whom the wife releases dower for part of the land, the covenantee, who consents that the wife retain that portion, is entitled to specific performance against both the covenantor and his grantee.

HOLMES, J. This is a bill specifically to enforce a covenant to sell to the plaintiff " the farm situated in that part of Mount Desert Island called Pretty Marsh, and consisting of between two hundred and sixty and two hundred and seventy acres, and

standing in the name of Benjamin Hodgdon, for the sum of fifteen hundred dollars cash, at any time within thirty days from the date hereof." The instrument is dated January 15, 1887, and is signed by the defendant Hodgdon, but not by his wife. The defendant Clara E. Allen is a subsequent grantee of the premises, and the remaining defendant, William H. Allen, is her husband. The judge who heard the witnesses made a decree for the plaintiff, and, the evidence having been reported, the defendants appealed.

Giving to the finding of the judge the weight which it must have, we think the evidence must be taken to establish the following facts. The instrument was sealed by Hodgdon, and has not been altered. The plaintiff expressed his election to purchase within the thirty days allowed. There was evidence of a message to that effect having been left at Hodgdon's house within ten days. It appears that a blank deed to the plaintiff and another was left there about the same time, and there was evidence that a message was sent to Hodgdon to execute it if he found it correct. There was also evidence that the deed was returned unexecuted, with the message that Mrs. Hodgdon refused to sign it, and with no other objection in the first instance. These facts warranted a finding that sending the deed implied, and was understood to imply, notice that the plaintiff intended to buy, at least if the deed corresponded to the contract, (see *Warner* v. *Willington*, 3 Drew. 523, 533,) and perhaps whether it corresponded or not, as the message even as testified to by Hodgdon imported a willingness to correct mistakes.

The defendants take the ground that this deed did not correspond to the contract, because the deed included a mountain lot which is alleged not to be included in the land described by the contract. The question whether that lot is included in the contract is also important, of course, in deciding what land, if any, the defendant Allen should be required to convey. The words used must be construed in the light of the circumstances, and thus construed they might well have been found to import, and to have warranted the plaintiff in understanding that they imported, all the defendant Hodgdon's land in Mount Desert.

Hodgdon owned only three lots in Mount Desert. Two, of seventy and eighty acres respectively, are admitted to be em-

braced in the contract. The mountain lot, seemingly then regarded as of little or no value, and said to contain sixty acres, brings the total up to two hundred and ten acres. The contract was for between two hundred and sixty and two hundred and seventy acres. Hodgdon says that the plaintiff was introduced to him by a letter saying that he wished the refusal of the property down East for thirty days, evidently suggesting a bargain for the whole. The plaintiff testifies that, before signing, Hodgdon said that he had not so much land as was mentioned, but had so many acres in one lot, so many in another, and so many in a third, amounting in all to two hundred and fifteen acres, and that was all he owned; that the plaintiff said it did not make any difference whether it was two hundred and fifteen, or two hundred and sixty, or two hundred and seventy acres ; and that thereupon Hodgdon signed. Hodgdon acquired all the land by one deed, had previously offered the whole land as two hundred and sixty acres to others, subsequently made a deed of the three lots to the plaintiff, which was not delivered, and conveyed them by a similar deed to the defendant Mrs. Allen.

It is suggested that Hodgdon understood that the plaintiff was to pay him $1,500 for the land subject to a mortgage. But the agreement contains no such qualification, and must be construed as an agreement to convey a good title free from incumbrances, which there is evidence tending to show was the meaning of the parties. *Linton* v. *Hichborn*, 126 Mass. 32. If, without the plaintiff's knowledge, Hodgdon did understand the transaction to be different from that which his words plainly expressed, it is immaterial, as his obligations must be measured by his overt acts. *Western Railroad* v. *Babcock*, 6 Met. 346, 352. *O'Donnell* v. *Clinton*, 145 Mass. 461, 463.

The plaintiff, although he signified his election to take the land within thirty days, did not pay or tender the money within that time. But there is evidence that Hodgdon was responsible for this. At or soon after the time when word was sent that Mrs. Hodgdon refused to sign, a demand or request was made that Mrs. Hodgdon should have three acres out of one of the other lots as a consideration for her signing the deed. Of course, under the contract the plaintiff had a right to call upon Mr. Hodgdon to give a good title to the whole, but he was disposed

to yield something. A discussion ensued, of course on the footing that the plaintiff was desirous of making the purchase, which of itself was evidence that the defendant Hodgdon had notice of the fact, and this was prolonged beyond the thirty days. When the parties came to terms, a new deed was prepared and tendered, was executed by the Hodgdons, and was handed to a Mr. Chapin, who had acted as a go-between. But later in the same day Chapin was ordered not to deliver the deed, and the bargain with the plaintiff was repudiated. There is no dispute that the plaintiff was ready to pay for the land at any time when he could get a conveyance.

Afterwards Hodgdon conveyed to Mrs. Allen, Mrs. Hodgdon releasing dower. But Mrs. Allen had full notice of the agreement with the plaintiff before the conveyance to her, and before any agreement was made with her or her husband, and, although informed that the thirty days had gone by, she had notice that the plaintiff was expecting a conveyance, and that Hodgdon might have trouble by reason of his refusal to convey to the plaintiff. *Connihan* v. *Thompson*, 111 Mass. 270. *Hansard* v. *Hardy*, 18 Ves. 455, 462. Mr. Allen was asked whether he knew that the plaintiff had sued Hodgdon for damages before the purchase. This must have meant before the final conveyance to Mrs. Allen, as Mrs. Allen was party to getting the deed back from Mr. Chapin, and had notice of the plaintiff's rights at that time, before any suit was begun. But the evidence was excluded, and Mr. Allen's answer is not properly before us. He did not suggest that he was led by his knowledge to assume that the plaintiff would not seek specific performance, and must be taken to have known that the plaintiff still had the right to do so. *Connihan* v. *Thompson*, *ubi supra*.

The defendant Hodgdon's undertaking not having been a mere offer, but a conditional covenant to sell, bound him irrevocably to sell in case the plaintiff should elect to buy, and should pay the price within thirty days. The usual doctrine as to conditions applies to such a covenant, and as the covenantor by his own conduct caused a failure to comply with the condition in respect of time, he waived it to that extent. And upon the same principle he exonerated the plaintiff from making any tender when the new terms had been agreed upon, by wholly

repudiating the contract. *Carpenter* v. *Holcomb*, 105 Mass. 280, 282. *Ballou* v. *Billings*, 136 Mass. 307. *Gormley* v. *Kyle*, 137 Mass. 189. *Lowe* v. *Harwood*, 139 Mass. 133, 136. If it be true, as testified for the defendant, that he also objected to signing a deed conveying the mountain lot, this was a further excuse for the delay. *Galvin* v. *Collins*, 128 Mass. 525, 527.

A covenant to sell is not voluntary in such a sense that equity will refuse specific performance. If the defendant conveys, he will get *quid pro quo*. *Western Railroad* v. *Babcock*, 6 Met. 346. *Irwin* v. *Gregory*, 13 Gray, 215. *Eastman* v. *Simpson*, 139 Mass. 348, 349. The description in the contract embracing all the land owned by the defendant at Mount Desert was sufficient. *Bacon* v. *Leonard*, 4 Pick. 277. *Hurley* v. *Brown*, 98 Mass. 545. *Rankin* v. *Wood*, 12 Gray, 34. *Mead* v. *Parker*, 115 Mass. 413. *Doherty* v. *Hill*, 144 Mass. 465.

It is objected, that the decree gives the plaintiff a title free from Mrs. Hodgdon's right of dower, and that, as Mrs. Hodgdon was not bound to release her dower to him, he ought not to profit by her release to Mrs. Allen. But who suffers injustice, or has a right to complain? Not Mrs. Hodgdon, who is not a party to or interested in these proceedings. She has released and extinguished her dower, and she retains the consideration which she received for it, as the three acres demanded by her are excepted from the conveyance ordered by the decree. Mr. Hodgdon cannot complain, as he contracted to convey a clear title. And the defendant Mrs. Allen, having taken Hodgdon's title with notice of the plaintiff's rights, and therefore charged with a trust in his favor, of course is bound to convey that title. The release of dower extinguished Mrs. Hodgdon's inchoate right, and did not convey a distinct interest to Mrs. Allen. *Learned* v. *Cutler*, 18 Pick. 9, 11. *Tirrel* v. *Kenney*, 137 Mass. 30, 32.

Without considering whether, if justice required it, the defendant Allen might not be protected by treating the incumbrance as if it still existed, there is no ground for doing so in this case. Mrs. Allen, through her husband, actively promoted Hodgdon's breach of agreement. If she receives back from him the consideration which she paid in excess of that ordered to be paid to her by the plaintiff, she will be *in statu* .

*quo,* and the loss will fall on Hodgdon, as it ought to do, unless there was some arrangement by which the Allens were to indemnify him. In any event, no wrong will be suffered by any one, and the plaintiff gets what he contracted for.

*Decree affirmed.*

*F. S. Hesseltine,* for the defendants.

*G. Putnam & J. Fox,* for the plaintiff.

