CORNELIUS O'BRIEN *vs.* NICHOLAS BOLAND.

Suffolk.    January 24, 1896. — September 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Equity — Specific Performance of Agreement under Seal — Mutuality of Con-*
*tract — Fraud — Responsibility of Contracting Party for his Acts.*

It is no defence to a bill in equity to enforce specific performance of a contract, that
àt the time of his offer the defendant was mentally and physically depressed, if
he was responsible for his acts, understood the contents of the offer, and no fraud
was practised upon him, and that the price was inadequate, if the inadequacy
was not gross.

This court enforces specifically contracts assented to by both parties, and further
acted upon by the plaintiff in the bill to enforce, even when he has given only
a verbal assent, and but for the offer in his bill could not be held to perform on
his own part; but whether it will specifically enforce a contract upon which the
plaintiff has not acted except to give a mere assent, which would not enable the
defendant to enforce the contract against him, *quære.*

Because the written offer of A. to sell houses to B. within a certain period is under
seal, it is an irrevocable covenant conditional upon acceptance within the time
named, and the written acceptance within that time makes it a mutual contract,
which B. can enforce in equity.

BILL IN EQUITY, filed in the Superior Court for a specific per-
formance of an agreement to sell a block of uncompleted tene-
ment houses.    Hearing before *Dunbar,* J., who reported the case
for the determination of this court.    The facts appear in the
opinion.

*F. J. Daggett & G. P. Wardner,* for the defendant.

*C. W. Bartlett & S. L. Whipple,* (*W. R. Sears* with them,)
for the plaintiff.

BARKER, J.    The offer was made on Saturday, December 2,
1893, and the withdrawal on the following Monday.    Before
making the offer, the defendant sought and had two or three
interviews with the plaintiff for the purpose of selling the prop-
erty to him.    The defendant shortly before had been in a state
of mental depression, due to an accident which occurred some
years before and to attacks of dyspepsia; sometimes he was
very much depressed, at other times excited; sometimes he was
in a dazed and absent minded condition, and at other times very
despondent.    On the Saturday mentioned the parties came to

an understanding, and went to the office of an attorney who had acted in various matters for the plaintiff, and there the written offer was prepared by the attorney, and was signed, sealed, and delivered by the defendant. Before going to the office the parties drank several times together at the plaintiff's invitation. But the report finds that the defendant was not intoxicated, and that he was mentally responsible for his acts and understood the contents of the offer, and that no fraud was practised. The price named in the offer was twenty-six thousand dollars, three thousand dollars less than the value of the property. After making the offer, and before the attempted withdrawal, which was in writing, and stated, " Please take notice that I hereby withdraw my offer to sell to you premises, etc.," the defendant received a better offer. When the offer was withdrawn, it had not been accepted. Four days afterwards the plaintiff's attorney wrote to the defendant that the plaintiff would purchase in accordance with the offer. The letter made an appointment for closing the transaction for the following Monday, was silent as to the revocation, and assumed that the defendant was bound to convey. The defendant received this letter on December 8, and on the next day retained counsel, who sent him to the office of the plaintiff's attorney for his deed, which had been left there, but instead of getting the deed the defendant promised to be ready on the next Monday to pass the papers.

The offer was to sell at any time within ten days a block of uncompleted tenement houses, to finish them, and to guarantee them free from all lien or encumbrance, except a mortgage for ten thousand dollars, and, further, to give a good bond in the penal sum of twenty thousand dollars for the performance of the defendant's agreements. The defendant could not furnish such a bond.

While the defendant when he made the offer understood its contents and was mentally responsible, and no fraud was practised upon him, the bargain was a hard one in the inadequacy of the price, and was beyond his power to carry out. The plaintiff shows no reason why he would not be fully compensated by damages in an action at law.

The defendant contends that the inadequacy of the price and

his own depressed mental and physical condition should induce a court of equity, in the exercise of a sound discretion, to decline to enforce specific performance. But the substance of the report is that the bargain was voluntarily and understandingly made by a sick man, who himself sought the plaintiff, and who attempted to withdraw his offer after having received another which he thought better. The finding that no fraud was practised negatives the idea that advantage was taken of his infirmities. The inadequacy of price, — three thousand dollars in a sale of property worth twenty-nine thousand, — is not gross, the sale being of unfinished dwellings. We cannot say that these matters preclude the plaintiff from equitable relief. *Western Railroad* v. *Babcock*, 6 Met. 346. *Lee* v. *Kirby*, 104 Mass. 420. *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90. *Thaxter* v. *Sprague*, 159 Mass. 397. See *Boston & Maine Railroad* v. *Bartlett*, 10 Gray, 384; *Love* v. *Sortwell*, 124 Mass. 446; *Chute* v. *Quincy*, 156 Mass. 189.

The defendant contends that, because he could not have compelled the plaintiff to buy before the acceptance of December 8, there is a want of mutuality which should defeat the bill. We enforce specifically contracts assented to by both parties, and further acted upon by the plaintiff, even when he has given only a verbal assent, and but for the offer in his bill could not be held to perform on his own part. *Old Colony Railroad* v. *Evans*, 6 Gray, 25, 33. *Dresel* v. *Jordan*, 104 Mass. 407, 412. *Slater* v. *Smith*, 117 Mass. 96. *Mansfield* v. *Hodgdon*, 147 Mass. 304. Whether we should specifically enforce a contract upon which the plaintiff has not acted except to give a mere assent, which would not enable the defendant to enforce the contract against him, it is not necessary to discuss. See *Putnam* v. *Grace*, 161 Mass. 237, 247. In the present case, because the offer was under seal, it was an irrevocable covenant, conditional upon acceptance within ten days, and the written acceptance within that time made it a mutual contract which the plaintiff can enforce. *Mansfield* v. *Hodgdon, ubi supra.* See also Clark, Con. 47; Lawson, Con. § 12; Pomeroy, Spec. Perf. § 169. The plaintiff might have assented to the withdrawal, and the offer would have been at an end. *Ballou* v. *Billings*, 136 Mass. 307, 309. But he was not bound to assent, and could

treat the withdrawal as inoperative.  If he elected so to treat it, he should accept the covenant and await some further breach. *Daniels* v. *Newton*, 114 Mass. 530.  The withdrawal, if itself a breach, was only one step toward the situation which would enable the plaintiff to ask for specific performance in a court of equity.

In this view of the case, it is unnecessary to consider whether there was a waiver of the withdrawal.

The result is that the plaintiff may have such specific performance as is now possible.  The terms of the decree will be settled in the Superior Court.                            *So ordered.*