RALPH L. ABBOTT, et al., In Equity,

*vs.*

WALLACE M. FELLOWS.

Cumberland.    Opinion May 7, 1917.

*Conditions subsequent in deeds.    Presumption of payment of mortgage after lapse
of twenty years, in the absence of evidence to the contrary.    Rule as to the record of
an undischarged mortgage given more than thirty years creating a substantial
incumbrance upon the title, where the defendant and his predecessors
have occupied the premises without interruption for more than
forty years.    Rule where defendant has agreed to convey cer-
tain lots by warranty deed and plaintiff claims defects
in title but makes no demand for conveyance or
tender of purchase price.*

In a bill in equity brought on November 12, 1914, asking the cancellation of a
written contract dated October 10, 1910, for the sale of certain lots of timber
land, because of certain alleged false and fraudulent representations on the
part of the defendant vendor, it is,

*Held:*

1.   That the alleged infirmity in the title to certain lots conveyed by the Common-
wealth of Massachusetts in 1792 cannot prevail.    That deed contained merely
a condition subsequent, and in the case of a grant from the State with a con-
dition subsequent, the title remains valid in the grantee until the State by
some legislative act avails itself of a forfeiture.    There has been no attempted
re-entry here for breach of condition.

2.   In the absence of evidence to the contrary, the presumption of payment of a
debt, although secured by a mortgage, arises after the lapse of twenty years,
and in view of the fact that the defendant and his predecessors in title have
occupied the premises without interruption for more than forty years, the
record of an undischarged mortgage given more than thirty years ago creates
no substantial defect in the title.

3.   That there was no representation as to the territorial union of lots three and
four, but simply as to the contract union for the purposes of sale, which was
true.

4.   That even if the title in the vendor as to a portion of Lot 4 was imperfect at
the time the contract was made, if he perfects it before he is called upon to con-

vey, the plaintiffs cannot complain.   The language of the contract refers to the title which is to pass by the deed and not to the conditions existing when the contract was made.                                                        -

5.   That the alleged misrepresentations on the part of the defendant as to the quantity of standing timber upon Lot No. 7, were merely honest expressions of opinion, and whether or not his estimates were correct has never been determined because the lumber remains uncut.

6.   The evidence fails to disclose any substantial grounds for the plaintiff's prayers for relief.

Bill in equity asking for the cancellation of a certain written contract for the sale of real estate on account of alleged fraud and false representations on part of vendor.   Cause was heard upon bill, answer and proof.   At close of testimony, the Justice hearing the same being of the opinion that questions of law were involved of sufficient importance and doubt to justify the same, and the parties agreeing thereto, this cause was reported to the next term of the Law Court for its determination upon so much of the evidence as is admissible.   Bill dismissed with a single bill of costs.

Case stated in opinion.

*Eben Winthrop Freeman,* for plaintiffs.

*Frank W. Butler, and Elmer E. Richards,* for defendant.

SITTING:  SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, MADIGAN, JJ.

CORNISH, J.   This bill in equity was brought to cancel a written contract for the sale of real estate, because of certain alleged false and fraudulent representations on the part of the defendant, the grantor.

The contract was made on October 10, 1910.   It included seven lots of timberland and the total consideration was to be eighteen thousand five hundred dollars.   Separate valuations were placed upon separate lots, at which they were to be conveyed by warranty deed, with the wife's right of descent duly released, whenever desired by the plaintiffs.   The agreement expires September 1, 1922.   In the meantime the plaintiffs are to pay to the defendant annual interest at the rate of five per cent on the amount remaining unpaid, and also all taxes assessed upon the property.   No tender of payment on any of these lots has been made by the plaintiffs and therefore the legal title still remains in the defendant.   The plaintiffs paid without

protest or complaint interest and taxes for the years 1911, 1912 and 1913, aggregating $3,164.65. In a letter to the defendant dated November 11, 1914, more than four years after the contract was made, the plaintiffs for the first time set up a claim of right of rescission on the ground of false and fraudulent representations as to the location, quantity and boundaries of the land, the incumbrances existing thereon, the defendant's title and his right to convey. This bill in equity was brought on the following day, November 12, 1914, asking for the cancellation of the contract and the restoration of the various payments made by the plaintiffs with interest thereon.

The grounds urged are as follows:

1. DEFECTS IN TITLE TO LOTS 1, 3, 4, 5, 6, 7.

The infirmity complained of is this. These lots situated in Wyman Plantation so-called, were originally conveyed by the Commonwealth of Massachusetts to Jedediah Prescott, Jr., and Nathaniel Whittier by deed dated February 28, 1792. This deed contained a condition that the grantees, within nine months from its date, should execute a deed in fee of one hundred acres each to seven different parties, evidently settlers, upon the payment therefor of the sum of thirty shillings. The records show no subsequent conveyance to three of these parties. This breach of condition on the part of Prescott and Whittier is set up by the plaintiffs here.

The answers to this claim are evident. In the first place, the deeds were not to be executed to the settlers until the purchase price of thirty shillings was paid. It does not appear that this consideration was ever paid or tendered, so that a breach of condition in fact is not proved. In the second place, this provision in the Massachusetts deed constituted a condition subsequent. The title vested in Prescott and Whittier subject to its being revested in the Commonwealth by entry for breach of condition. Under these circumstances the estate continued in the grantees or their assigns until defeated by an actual entry for the purpose of claiming a forfeiture by someone having the right so to do. *Osgood* v. *Abbott,* 58 Maine, 73; *Chapman* v. *Pingree,* 67 Maine, 198. In case of a grant from the State, containing a condition subsequent of this nature the title remains valid in the grantee, until the State by some legislative act shall avail itself of a forfeiture. *Little* v. *Watson,* 32 Maine, 214. In the case at bar no such action has ever been taken, so far as the evidence discloses, either by the

Commonwealth of Massachusetts or the State of Maine. The title granted in 1792 cannot be successfully assailed on this ground by a third party. It stands unimpeached.

2. DEFECT IN TITLE TO LOT No. 5.

This consists of an undischarged mortgage for $1600. given by Jethro Brown to Moses T. Bean on June 30, 1883.

In the absence of any evidence to the contrary, the presumption of payment arises after the lapse of twenty years. *Howland* v. *Shurtleff*, 2 Met., 26; *Ayres* v. *Waite*, 10 Cush., 72; *Sweetser* v. *Lowell*, 33 Maine, 446; *Chick* v. *Rollins*, 44 Maine, 104; *Jarvis* v. *Albro*, 67 Maine, 310. In view of the fact that the mortgagor and his assigns have remained in undisputed possession of the premises, that the defendant and his predecessors in title have occupied without interruption for more than forty years, the record of an undischarged mortgage given more than thirty years ago creates no substantial incumbrance upon the title.

3. CONTIGUITY OF LOTS 3 AND 4.

The bill alleges that the defendant falsely and fraudulently represented that lots 3 and 4 adjoined each other and constituted one lot, when in fact they are separated and therefore cannot be operated with the same economy as a single lot. The evidence fails to substantiate the alleged misrepresentation. One of the plaintiffs testified· that when the contract was drawn the defendant "explained that the two lots were together and he was selling them as one lot." The meaning is clear. The timber, not the soil of these two lots was to be conveyed, and the agreement contained this clause: "The valuation of the standing black growth to be deeded under preceding paragraph 3 and under this paragraph 4 for purposes hereinafter mentioned, is to be five thousand dollars ($5,000.) for all." That is, there was no separate valuation for the timber on the two lots, but the lots were taken together at a single figure and considered as one. There was no representation whatever as to the territorial union, but simply as to the contract union, which was true.

4. SOUTHWESTERN BOUNDARY OF LOT No. 4.

The plaintiffs claim that before they made the contract, the defendant pointed out the southwestern boundary of lot 4 as a line running from a forked ash tree to a pine stub near the road, whereas

the true line strikes the road near a birch stump, some three hundred feet easterly of the pine stub. The effect of this is to diminish the stumpage on lot 4, as the plaintiffs claim, about one hundred and fifty thousand feet.

Assuming these claims to be true they cannot avail the plaintiffs in this proceeding.

The defendant has agreed to convey the various lots by warranty deed whenever, prior to September 1, 1922, the plaintiffs shall demand a conveyance and tender the stipulated price therefor. Until such demand and tender are made and the defendant fails to convey according to the terms of the contract there is no default on his part, The crucial time is the time of delivery of the deed, not the making of the contract. Assuming that the title was imperfect when the contract was made, if he perfects it before he is called upon to convey, the plaintiffs cannot complain. This is settled law and applies not only to this particular point under consideration but to all defects of title or incumbrances, which have been discussed under previous heads. The language of the contract refers to the title which is to pass by the deed and not to the conditions existing when the contract was made. *Galvin* v. *Collins*, 128 Mass., 525; *Kares* v. *Covell*, 180 Mass., 209; *Smith* v. *Greene*, 197 Mass., 16. The defendant, since the contract was made, has purchased the land lying westerly of lot 4, so that whatever the true line may be, he is in a position to make good his representation. In his answer he states that he is ready and willing to convey to the line pointed out by him. He is now able to do so. Under these conditions the plaintiffs should not ask a court in equity to cancel the contract. They will obtain title to all that they understood they were purchasing and the defendant will have faithfully executed his contract.

5. MISREPRESENTATIONS AS TO LOT 7.

These as claimed by the plaintiffs are two. First as to the quantity of standing timber on the lot, and second as to certain timber which was pointed out as being within the lot boundaries.

It appears that the attention of the plaintiffs was called to all this timberland not by the defendant but by one Lander, a forester, who interested them in the purchase and finally received a commission from them when the contract was completed. He was their agent, not the defendant's. For two days prior to the execution of the

contract, the plaintiffs and Lander with the defendant cruised the tracts to ascertain in a general way the quantity of stumpage. "We went through satisfactory to ourselves," as one of the plaintiffs testified, and when he was asked why they did not spend more time in exploration, he replied "I think probably at that time we thought we had seen enough," and the plaintiffs were timber purchasers and operators of considerable experience. It is doubtless true that during the course of the examination of lot 7 the defendant estimated that while the lot embraced one hundred acres there were about fifty acres containing black growth, that there was about a million feet of timber and that he thought there was also some scattering pine that belonged to him down toward the Plymouth line. But all his statements were mere expressions of opinion, merely his own judgment as to the contents and value of the lots. Such expressions as between buyer and seller do not constitute false representations, even if they are false and intended to deceive. Neither of these elements is present here. We think the defendant's statements were honest expressions of his belief and whether or not his estimates were correct has never been ascertained, because the timber remains uncut. It is still a matter of estimate.

In fact, a careful study of the entire evidence fails to disclose any substantial grounds for the plaintiffs' prayers for relief. The trade was solicited by them, not by the defendant. They had full opportunity to examine the property before the contract was made and did examine it to their own satisfaction. No advantage was taken or sought to be taken by the defendant. For three years after the agreement was consummated the plaintiffs were apparently satisfied with their bargain, because they uncomplainingly paid the taxes and the annual interest. It was not until the end of the fourth year that they suddenly discovered the fraud that had been perpetrated upon them so long before. This late discovery savors more of an excuse for nonperformance on their part than of a valid reason for forced cancellation on the part of the defendant.

*Bill dismissed with a single bill of costs.*