*Municipal Court of the City of Boston*

No. 400780

## WILLIAM J. MacDONALD
### v.
## LAMBROS A. MIHALOPOULOS, ET AL

(May 3 — May 15, 1957)

*Adlow, C. J.* Action to recover a broker's commission. The basic facts do not appear to have been in dispute. It appears from the report that one John F. Collins was in May, 1954 interested in purchasing a tavern located at the premises at 142-146 South St., Jamaica Plain, Mass. Said Collins was acquainted with William J. MacDonald, a real estate broker and plaintiff in the cause in issue. MacDonald knew the owner of the premises on which the tavern was located. He was requested by Collins to negotiate for the purchase of the property; he was expressly directed not to concern himself in any way with the pending negotiations for the sale of the tavern which was owned by a tenant of the defendant.

Acting on these instructions the plaintiff went to

the defendant on May 19, 1954 and asked him if he was interested in selling the building in question for $24,000. The defendant said he would sell on this basis, and the next day the plaintiff brought Collins to the defendant and at this time the parties agreed to a sale of the property for $24,000 to be paid in cash. A $1,000 deposit was paid by Collins to the defendant who signed two receipts acknowledging the deposit and setting forth the location of the property and the purchase price. These receipts had been prepared in advance by the plaintiff who brought them with him. They were signed by the defendants and witnessed by John F. Collins. In the left hand corner appeared the words, "W. J. MacDonald Broker for Sellers." On the copy retained by the plaintiff there appeared after these words "commission to be paid him." While the defendant denied that these latter words were in the receipt when he and his wife signed it, the matter has no material bearing on the issue, it being conceded that the plaintiff was the broker, and was the one entitled to the Commission if one was earned.

At the time this receipt was given it was agreed that a formal agreement was to be executed by the prospective buyer and seller on the following Monday at the office of the defendant's lawyer, and the plaintiff (broker) agreed that he would have his lawyer, one Friedberg, prepare the necessary papers in the meantime.

While the plaintiff testified that the defendant told him, "If you can put it through for $24,000 I'll give you $1,000", the defendant claimed that he told the broker that "When papers are passed I'll pay you a commission of $1,000." In view of the eventual disposition with respect to the facts by the court, the disparity in the versions of the respective parties has no legal bearing on the issue on which the outcome depends.

Having obtained the receipt for his deposit the

buyer went away. On the day appointed for the execution of the formal agreements of purchase and sale neither Collins nor the broker appeared at the office of the defendant's lawyer as had been agreed. On the next day, however, a representative from Mr. Friedberg's office brought to the office of the defendant's lawyer unsigned real estate agreements which he left there. At no time did Collins appear at the office of the defendant's lawyer or in any way attempt to secure the execution of a formal agreement. About ten days after Collins had obtained the receipt for the deposit from the defendant, he effected the purchase of the tavern located on the premises, and admitted on the stand that he had shown the receipt to the tavern owner before the transaction was consummated. After Collins completed his negotiations for the purchase of the tavern he advised the parties that he had lost all interest in the property and would not sign any agreement.

At the close of the evidence the court was asked to rule as a matter of law that on these facts the broker has done everything required of him to earn his commission, and that in signing a receipt the defendant acknowledged that there was nothing further to be done. The court refused to so rule and in addition expressly found that the broker did not produce a customer who was ready, willing, and able to purchase the property.

We concur in these rulings. While the broker has found a seller who was ready, willing, and able to sell, he did not produce a buyer who was ready, willing, and able to buy. The mere fact that a buyer expresses satisfaction with the terms of a proposed deal and even gives a deposit as an evidence of good faith does not warrant the conclusion that a sale has been consummated. To become entitled to a commission a broker must produce a customer who not only expresses himself as ready and willing to buy, but who within a reasonable time is willing to sign

a binding agreement to secure his eventual completion of the transaction. He does not have to take title at once. *Carpenter v. Holcomb,* 105 Mass. 280, 285, but he must be willing to sign a legally enforceable agreement which will bind the parties until the transaction is consummated. *Quinn v. Burton,* 188 Mass. 466, 469.

The rulings under review are consistent with a long line of decisions in this Commonwealth. When a seller accepts a deposit and signs an informal receipt on the understanding that within a few days a regular agreement of sale is to be made by the parties and signed by both of them, the buyer cannot be said to have been ready or willing if he does not appear at the time appointed for the execution of the agreement. *Bemister v. Hedtler,* 249 Mass. 40; *Doten v. Chase,* 237 Mass. 218; *Goldstein v. Ziman,* 259 Mass. 430.

It is significant that the plaintiff prepared the receipt signed by the defendant. It was in his power to have so prepared the receipt that the name of the buyer would have been applied to it as such and not as a witness. Apparently the broker had some reason for preferring to prepare the receipt as he did. As a result he got for Collins an irrevocable option to buy the property later at a fixed price if he wanted it. He got for the seller nothing except the deposit. This was not the purpose for which the defendant had engaged the broker. Until the buyer and seller had become bound by a proper and enforceable agreement, it could not be said that the seller had accepted the customer of the broker or that the buyer was ready, willing, and able to purchase on the seller's terms. *Rice v. Mayo,* 107 Mass. 550, 552; *Johnson v. Holland,* 211 Mass. 363; *Bruce v. Meserve,* 228 Mass. 463, 465; *Bemister v. Hedtler,* 249 Mass. 40.

There is no mystic charm in the words "ready, willing, and able." In all these transactions involving

the eventual transfer of valuable property rights, one who would qualify as the broker who is entitled to a commission must meet two tests: (1) he must produce a customer ready, willing and able to take title on the day fixed for passing papers and (2) this customer must be willing to sign an agreement that is binding on him. *Carpenter v. Holcomb,* 105 Mass. 280; *Quinn v. Burton,* 188 Mass. 466.

Regardless of the conditions which the law impliedly reads into these arrangements, the parties in the cause in issue actually agreed to evidence their arrangement by a formal written agreement. What is more, the plaintiff was an active factor in making the arrangement. It was never carried out. At no time did the defendant have a legally enforceable agreement with the proposed buyer, although he was willing at all times to do his share in executing one.

For cases supporting proposition that purchaser must be bound in a manner to satisfy the Statute of Frauds (G. L. c. 259, §1), see *Dangel: Real Estate Brokers,* pp. 151-152.

*Report dismissed.*

Jacob Friedberg and Selma Fox, for the Plaintiff.
Joseph Coriello, for the Defendant.