## JOSEPH W. ROPES vs. FRANKLIN UPTON.

Essex. Nov. 10, 1877. — Aug. 30, 1878. MORTON & SOULE, JJ., absent.

A. and B., partners in business in D., dissolved their partnership by consent. A. agreed to assume the debts of the firm, and B. agreed in writing to sell to A. all his interest in the assets and good-will of the firm for a certain sum, and "not to manufacture or sell or become engaged in said business, either for myself or others, hereafter in the town of D., under the forfeiture of $1000 to be paid to said A. in case of breach of these conditions." *Held,* that A. was entitled to an injunction to restrain B. from violating his agreement.

BILL IN EQUITY, filed October 1, 1877, to restrain the defendant from violating the following agreement, dated August 3, 1876, and signed and sealed by him : " This may certify that I, Franklin Upton, of the town of Danvers, in consideration of the sum of $500 to me paid by Joseph W. Ropes, hereby agree to sell and relinquish all my interest and good-will in the business now conducted by Ropes & Upton, together with all debts now due them; and I hereby agree not to manufacture or sell or become engaged in said business, either for myself or others, hereafter in the town of Danvers, under the forfeiture of $1000 to be paid to said Ropes in case of breach of these conditions."

The bill alleged that Ropes, on or about August 1, 1861, entered into partnership with Upton, for the purpose of carrying on the business of manufacturing and selling stoves and tin ware in Danvers, under the firm name of Ropes & Upton, and so continued until August 1, 1876, at which time the partnership was dissolved by mutual consent; that they then agreed that Ropes should assume the payment of all debts of the firm, and Upton should sell to Ropes for $500 all his interest in the firm assets, including the good-will of the business, and agree not to engage in the business of manufacturing or selling stoves or tin ware, either for himself or others, thereafter, in Danvers, under a forfeiture of $1000 in case of breach of such agreement ; that Ropes accordingly paid to Upton $500, and took from him the above agreement ; and that Ropes then continued to carry on such business in Danvers in connection with his son, but that Upton, in violation of his agreement, had also become engaged in such business in Danvers, and still continued to carry on the

same, to the great and manifest injury of Ropes. The prayer of the bill was for an injunction, and for general relief.

The defendant demurred for want of equity, and because the plaintiff had a plain, adequate and complete remedy at law.

The case was heard on bill and demurrer, before *Endicott*, J., who reserved the case for the consideration of the full court,

*W. H. Gove*, for the defendant.

*J. A. Gillis*, for the plaintiff.

ENDICOTT, J. When a party has sold to another all his interest and good-will in a particular business, and has agreed not to carry on the same business in the same place, a court of equity will prevent him by injunction from violating the express agreement he has made. *Angier* v. *Webber*, 14 Allen, 211. *Dwight* v. *Hamilton*, 113 Mass. 175. *Boutelle* v. *Smith*, 116 Mass. 111. Whether this case falls within the general rule is the question to be decided.

The parties were partners, engaged in the manufacture and sale of stoves and tin ware in Danvers. They dissolved their partnership by mutual consent. The plaintiff agreed to assume all the debts owed by the firm, and the defendant agreed to sell all his interest in the assets and good-will to the plaintiff for the sum of $500; and the defendant further agreed that he would not enter into the same business in Danvers, under a forfeiture of $1000 in case of breach of the agreement. In pursuance of this agreement, the defendant gave to the plaintiff the writing made a part of the bill.

The case turns upon the construction to be given to this agreement. If the defendant has agreed not to do the act under a penalty of $1000 for a breach, equity will restrain him; for a penalty is merely security for the performance of the contract, and is not the price for doing what a man has expressly agreed not to do. *Dooley* v. *Watson*, 1 Gray, 414. In *Hardy* v. *Martin*, 1 Cox Ch. 26, Lord Loughborough said, the court would restrain a person from setting up a trade in opposition to his agreement, although he had paid the penalty. If, on the other hand, the true interpretation of the agreement is that the $1000 was intended to be liquidated damages, then it is contended by the defendant that the court will not interfere by injunction, because the plaintiff has his complete remedy at law; and this mainly

on the ground of the nature of this contract. In determining the question whether the sum named is a penalty or liquidated damages, courts give but little weight to the mere form of words, but gather the intent from the general scope and purport of the contract; and as it is difficult to estimate damages arising from the breach of an agreement, the subject matter of which is the good-will of a particular business, the current of authorities is to treat the sum named as liquidated damages rather than a penalty.

It is often stated that a court of equity will not interfere to prevent a party from doing an act which he has agreed not to do, when liquidated damages are provided in case he does the act. But this must be taken with some qualifications; for it must appear, from the whole contract, that the stipulated sum was to be paid in lieu of the strict performance of the agreement, and was an alternative which the party making the covenant had the right or option to adopt; as in the cases often cited in support of the general proposition; *Woodward* v. *Gyles*, 2 Vern. 119; *Rolfe* v. *Peterson*, 2 Bro. P. C. (2d ed.) 436; *Ponsonby* v. *Adams*, 2 Bro. P. C. 431. In *Woodward* v. *Gyles*, the defendant agreed not to plough any part of the land demised, and, if he did, to pay twenty shillings per acre; and it was held that he had the privilege to plough on paying the additional rent, and the court did not restrain him from doing that which the contract provided he might do. So in *Rolfe* v. *Peterson* and *Ponsonby* v. *Adams*, the substance of the contracts was held to be, that in one contingency the defendant was to pay a certain rent, and in another that he should pay a larger rent, and the court would not interfere. It is said, in all the cases on this subject, that the question in every case is, What is the real meaning of the contract? And if the substance of the agreement is, that the party shall not do a particular act, and that is the evident object and purpose of the agreement, and it is provided that, if there is a breach of this agreement, the party shall pay a stated sum, which does not clearly appear to be an alternative which he has the right to adopt instead of performing his contract, there would seem to be no reason why a court of equity should not restrain him from doing the act, and thus carry out the intention of the parties. If such appears to be the pur

pose of the agreement, the fact that the sum to be paid is a stated or stipulated amount, in the nature of liquidated damages, should not oust a court of equity of its jurisdiction to compel the party to carry out his agreement. In other words, naming a sum to be paid as liquidated damages does not in itself conclusively establish that the parties contemplated the right to do the act upon payment of the compensation, and make an alternative agreement for the benefit of the party who has done what he had agreed not to do.

A court of equity fastens on the real contract, and compels the execution of the very thing covenanted to be done. *French* v. *Macale*, 2 Dr. & War. 269, 276. It was said in that case by Sir Edward Sugden, afterwards Lord St. Leonards, " A man cannot protect himself against discovery, if he has done the act which he has covenanted not to do, because a penalty is annexed ; if he engages not to do the act, he cannot be heard to say, this is a penalty ; and whether the whole is or is not recoverable, he must in this court make discovery whether he has done the act." It is obvious that the word " penalty " is not here used in its technical sense. See also *Jones* v. *Green*, 3 Yo. & Jerv. 298.

It is clear, upon examining the language of this agreement as applied to the subject matter of the sale, that its object is to secure absolutely to the plaintiff the exclusive right, as against the defendant, to pursue the business of manufacturing stoves and tin ware in Danvers. The defendant, having sold his interest and good-will, expressly stipulates not to engage in the business. The language is, " I hereby agree not to manufacture or sell or become engaged in said business, either for myself or others, hereafter in the town of Danvers, under forfeiture of $1000 to be paid to said Ropes in case of a breach of these conditions." There is nothing here to show a right or option in the defendant to manufacture upon payment of the money, or that the agreement would be satisfied by the payment of the sum stated ; it is an absolute engagement not to do certain acts, and thereby interfere with the plaintiff's business. This is a distinct agreement, independent of the stipulation as to the money to be paid, if he violates his agreement, or, to use the precise language, "in case of a breach of these conditions." These words show that the defendant could not engage in the business without break-

ing the agreement not to do so. The substance of the whole paper is, that the defendant covenants that he will not do a particular thing, and then says, " If I do, I will pay you $1000 as satisfaction ; " but this does not prevent a court of equity from enjoining him from doing that which he has agreed not to do. The language might well be treated as creating a penalty, except for the tendency of the courts in this class of cases, as before stated, to hold that liquidated damages were intended. But assuming this to be a case of liquidated damages, there is abundant authority to show that the distinction contended for is not regarded by courts of equity.

In *Sainter* v. *Ferguson*, 1 Macn. & Gord. 286, the defendant agreed not to practise within seven miles of Macclesfield under a penalty of £500. Upon application for an injunction to restrain a breach of the agreement, the court ordered the motion to stand over with liberty to the plaintiff to take proceedings at law. The plaintiff brought his action and recovered £500 by way of liquidated damages. *Sainter* v. *Ferguson*, 7 C. B. 716. He then renewed his application for an injunction, but the court refused to interfere. Lord Cottenham, in delivering judgment, said : " It is true that, if the plaintiff had seen the difficulty which has since arisen, he might have put the matter so as to have had the option left to him either of exercising his legal right or his equitable remedy, and not to have been precluded from the alternative which, before the action, he had, either to ask for an injunction, or to obtain compensation at law. The order, however, does not provide for this ; it places the plaintiff under no restriction ; it only refuses to interfere until the legal right has been tried. It was then the plaintiff's own choice to go on ; and the matter now stands just as if the plaintiff had brought the action first, and then come to this court for an injunction." 1 Macn. & Gord. 290. And in *Fox* v. *Scard*, 33 Beav. 327, it was held, on the authority of *Sainter* v. *Ferguson*, that where a person enters into an agreement not to do an act and gives his bond to another to secure it in a penal sum, the latter has a right in law and equity, and can obtain relief in either, but not in both courts.

Two cases decided by Lord Hatherley, when Vice Chancellor, are in point. In *Bird* v. *Lake*, 1 Hem. & Mil. 111, two persons

Hill and Lake, having been engaged in business as eating-house keepers, at two different houses, one 49 Cheapside, which had originally been Lake's, and the other 13 Gracechurch-street, which had from the first belonged to Hill, dissolved partnership and made an indenture by which it appeared that Lake had entered into a covenant that he would not use any means to obtain the custom or business of Hill, nor carry on the trade or business of an eating-house keeper, within one mile of Gracechurch-street, without paying Hill £1500, as or by way of stated or liquidated damages. It was held that this was an absolute covenant not to do an act, and that such covenant would not (in the absence of a bill to rectify the deed) be controlled by the recital in the deed in regard to the stated or liquidated damages. In *Howard* v. *Woodward*, 34 L. J. (N. S.) Ch. 47; *S. C.* 10 Jur. (N. S.) 1123, the condition of a bond contained the recital that the defendant had agreed to become the managing clerk of a solicitor, and that he would not practise at or within fifty miles of Weymouth, and if he did so, then, if he should pay to the solicitor £1000 as liquidated damages, the bond should be void. On breach by the defendant, it was held that the agreement was not intended to be satisfied by the payment of the sum named, and that the court would interfere by injunction. See also *Coles* v. *Sims*, 5 De G., M. & G. 1. The entry must therefore be *Demurrer overruled.*