### LINDEN PARK GARAGE, INC. *vs.* CAPITOL LAUNDRY COMPANY.

Suffolk.    October 3, 1933. — November 28, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Equity Jurisdiction,* Specific performance, Laches. *Landlord and Tenant,* Renewal of lease.

A lease of garage property for a term ending June 30, 1929, contained a covenant that, if the lessee should "be desirous of taking a renewal lease of the said premises for the further term of three years," and, one month prior to the expiration of the term named in the lease, should give the lessor notice in writing thereof and perform other covenants in the lease, the lessor "will upon the request and at the expense of the Lessee forthwith execute and deliver to the Lessee a renewed lease . . . for the term of three years at the same yearly rent and under and subject to the same covenants and agreements as are hereby contained other than this present covenant." The lessee gave the notice required on May 14, 1929, and continued to occupy the premises after the term named in the lease. At the hearing of a suit in equity by the lessor against the lessee for specific performance of the covenant and for the payment of rent subsequent to August 31, 1931, there was evidence that new leases were prepared by the plaintiff on May 27, 1929; that in June, 1929, the lessee through its agent stated that the lessee did not wish to sign until certain repairs, to which the lessee contended he was entitled, were made; that, following conferences of the parties, the extent of repairs to be made was agreed upon and the repairs were made by the lessor; that early in December, 1929, a duplicate original of the lease was delivered to the lessee for execution, but was not executed; and that on July 31, 1931, the lessee gave notice to the lessor of intention to vacate the premises and did so one month thereafter. The suit was brought on December 18, 1931, and was heard in July, 1932. The judge ruled "that at the time the present bill was filed the plaintiff was entitled to specific performance of the rental agreement,"

but that, the time for specific performance having expired, a decree for money payment should be entered, and such a decree was entered by his order. The lessee appealed. *Held,* that

(1) Both parties having performed all conditions which were to be performed, each of them could have compelled the other through a decree for specific performance to execute the lease by him to be executed;

(2) The facts which might have been found by the judge warranted the conclusion of fact that the plaintiff's delay in enforcing his rights was not due to negligence and was not intentional, and warranted the further conclusion that the defendant suffered no legal harm by having vacated the premises during the period of delay;

(3) The decree was proper and was affirmed.

BILL IN EQUITY, filed in the Superior Court with a writ of summons and attachment dated December 18, 1931, and afterwards amended, praying that the defendant be ordered to execute the renewal lease described in the opinion and to pay to the plaintiff with interest the rent which had accrued since August 31, 1931.

The suit was heard by *J. J. Burns,* J., a stenographer having been duly appointed to take the evidence. Material evidence is described in the opinion.

By order of the judge, a final decree was entered directing the defendant to pay the plaintiff $1,396.23 and costs. The defendant appealed.

*R. H. Peacock,* (*M. L. Hussey* with him,) for the defendant.

*N. B. Vanderhoof,* for the plaintiff.

PIERCE, J. This is a suit in equity brought by the plaintiff, as lessor, against the defendant, as lessee, to secure specific performance of a covenant to renew contained in a written lease. The lease was of a garage property at a rental of $216.67 monthly in advance, was dated June 30, 1927, commenced on July 1, 1927, and terminated June 30, 1929. It contained the following covenant for renewal: "It is hereby agreed that if the Lessee shall be desirous of taking a renewal lease of the said premises for the further term of three years from the expiration of the two-year term hereby granted and of such desire shall, prior to the expiration of the said last mentioned term, give to the said Lessor or its assigns one month's previous notice in writing and shall pay the said rent hereby reserved and observe

and perform the several covenants and agreements to be observed, and performing up to the expiration of the said term hereby granted, the Lessor or its assigns will upon the request and at the expense of the Lessee forthwith execute and deliver to the Lessee a renewed lease of the said premises for the term of three years at the same yearly rent and under and subject to the same covenants and agreements as are hereby contained other than this present covenant." This is the covenant on which the plaintiff seeks specific performance.

It is admitted by the answer that "on May 14, 1929, the defendant notified the plaintiff in writing that in accordance with the terms of said lease, which would expire June 30, 1929 . . . the defendant desired to renew said lease for a further period of three years, and thereby gave the plaintiff one month's previous notice in writing as provided by the terms of said lease." The defendant further admits in its answer "that on and after the termination of the aforesaid lease of June 30, 1927, to wit, on and after the 30th day of June, 1929, the defendant continued to occupy said premises and to pay rent, that on or about July 30, 1931, the defendant gave the plaintiff notice in writing that it would vacate said premises on August 31, 1931, that on or before August 31, 1931, the defendant did vacate said premises without the consent and against the protest of the plaintiff, and that the defendant has refused and still refuses to make any further payment of rent." The answer denied that the plaintiff had executed and delivered to the defendant the renewal lease required by the covenant and further denied that "during the period from May, 1929, to December, 1929, both inclusive, the plaintiff, at the request of the defendant, and relying upon the defendant's exercise of its option to renew the lease of June 30, 1927, expended large sums of money on the premises in making certain repairs exacted by the defendant as a condition precedent to executing said lease." The answer also pleaded that the plaintiff had been guilty of laches which bars it from maintaining this suit.

The writ is dated December 18, 1931, and was entered in court January 9, 1932. The suit was heard in the Superior Court on July 14, 1932, when an official stenographer was "designated to take the evidence in said case, to be reported to the Supreme Judicial Court." A final decree granting relief was entered therein on April 17, 1933. On April 25, 1933, the defendant filed appeals from the "memorandum and order for decree" and from the final decree and from all orders and rulings in said decree.

The reported testimony for the plaintiff, contradicted by testimony for the defendant, disclosed the following material facts: On May 14, 1929, the defendant exercised its option to renew the lease. New leases were prepared by the plaintiff's attorney on May 27, 1929, pursuant to a vote of the plaintiff's directors that the treasurer be authorized to deliver the renewal lease to the defendant. In June, 1929, the attorney for the plaintiff had a conference at his office with the treasurer of the defendant company, one Pendergast, and he said respecting the new lease, "The property is not in proper condition for rental." "It was not at the time of the original lease, and we don't want to sign the new lease until the property has been put in such condition as it will be satisfactory to us." The attorney referred Pendergast to Mrs. Muldoon, a director in the plaintiff corporation, who some time in June, 1929, conferred with Pendergast at the leased premises and they discussed the question of repairs "on the steam pipes, plumbing, windows, skylights." Repairs to the roof were made in June, 1929. On June 14, 1929, a plumbing company inspected the heating system on the leased premises at the request of Mrs. Muldoon.

On July 2, 1929, the attorney, as clerk of the plaintiff corporation, wrote a letter to the defendant, notifying it, in substance, that under the terms of the original lease the defendant was obliged to restore the leased premises to the condition they were in at the beginning of the term and that there were certain repairs that should be made by the defendant. This letter contained a postscript stating that

the "New leases have been drawn to be executed when above matters are attended to." On July 16, 1929, the defendant replied to the letter of July 2, 1929, denying that the premises were in good condition at the beginning of the term and concluding, "We don't feel that it is up to us to have to make repairs for damage done previous to our tenancy and if these matters were once attended to, there would be no question as to our keeping them in repair during our tenancy." Mrs. Muldoon went to the premises in July and in August, 1929, and conferred further with Pendergast about repairs which the latter thought should be made in addition to repairs to the skylight which had already been made, that is, about repairs to plumbing, steam heating and windows. They came to an agreement concerning the repairs finally about November 26 or 27, 1929, and Mrs. Muldoon told Pendergast that she "would do everything that was absolutely necessary."

At this conference on November 27, 1929, Pendergast told Mrs. Muldoon that he had not received the lease and asked her to attend to it. She told him she "was very much surprised that he had not received it," and said she "would call Mr. Thomas immediately and have him attend to it." This she did, and early in December, 1929, Pendergast called at the office of the attorney, Thomas, and said, "Mrs. Muldoon has made or agreed to make repairs satisfactory to us and I would like to get the leases to be executed." Thomas got the copies from the file and spread them out and said, "Here they are"; "Mr. Muldoon, who executed the copy for us, has passed away in the meantime and I will give you the unexecuted copy, and when you have signed for your company see that the seal and attested record of the fact is attached just the same as our copy, and when it is ready you return it and I will give you the copy which has been executed by the Linden Park Garage." Pendergast said, "All right, we will," and took the unsigned copy with him. Neither Mrs. Muldoon nor Thomas did anything further in the matter until the receipt of the notice of July 31, 1931, from the defendant company stating that the defendant intended to vacate the premises in question.

Mrs. Muldoon did nothing further about the leases because she did not see Mr. Thomas very frequently during the months following November, 1929. Mr. Thomas did nothing in the matter after the delivery of the duplicate lease to Pendergast because he had been ill and had become "completely blind . . . for pretty near four months" and was unable to do any work. Mrs. Muldoon first learned that the duplicate lease had not been signed on August 1, 1931, when she had the notification that the defendant was "vacating, on August 31, 1931, the premises." On August 6, 1931, the plaintiff replied to the defendant's notification of an intention to vacate that it intended to hold the defendant to its agreement for a renewal of the lease. After the defendant vacated the premises an agreement was made between the plaintiff and the defendant that the premises might be let pending the legal determination of the issue that had arisen between the parties. The defendant does not contend in its brief that if the plaintiff is entitled to prevail the amount due the plaintiff as computed by the judge in the memorandum and order for decree is incorrect. The trial judge ruled "that at the time the present bill was filed the plaintiff was entitled to specific performance of the rental agreement"; that "Since the time for the completion of performance under the contract has expired, specific relief cannot be granted"; but that a decree for the payment of money damages should be entered in favor of the plaintiff on the theory that the defendant "wrongfully refused to execute the lease tendered by the plaintiff in accordance with the rental clause of the original lease."

The defendant is entirely sound in its position that specific performance is not a matter of strict right, and that the power of the judge to grant specific performance is discretionary, not in the usual acceptation of that term but in the sense that the judge has power to refuse specific performance unless all the equitable incidents are present which create an equity in the plaintiff and give it a right to equitable relief. *Thaxter* v. *Sprague,* 159 Mass. 397. *Curran* v. *Magee,* 244 Mass. 1, 5. The defendant is also

right in its position that the covenant for renewal contemplated the execution of a new lease, and that the exercise of the option by the lessee with the paying of rent thereafter did not extend the term of the original lease through the additional time covered by the covenant of renewal. *Shannon* v. *Jacobson,* 262 Mass. 463. *Leavitt* v. *Maykel,* 203 Mass. 506.

These positions of the defendant are not controverted by the plaintiff. Its position is that, if the judge believed the testimony for the plaintiff and disbelieved that for the defendant, he was warranted in finding that the plaintiff had expended after the exercise of the option by the defendant a large amount of money in repairs upon the premises, relying upon the written and oral assurances of the defendant that it would renew the original lease; that the plaintiff performed all that was required of it when it executed one copy of the renewal lease and delivered a duplicate original copy to be executed by the defendant; that it was the duty of the defendant to execute the delivered copy because it had notified the plaintiff of its election to renew, and because the plaintiff made the repairs which the defendant demanded as a condition precedent to signing the lease. Both parties having performed all conditions which were to be performed, each of them could have compelled the other through a decree for specific performance to execute the lease by it to be executed. *Judkins* v. *Charette,* 255 Mass. 76, 81. The contention of the defendant that it was the duty of the plaintiff to "forthwith execute and deliver" a renewal lease of the premises is answered by the fact, if believed, that the defendant demanded that repairs should be made as a condition precedent to its signing the new lease. The defendant concedes that mere delay, provided it does not extend beyond the period of the statute of limitations, does not of itself amount to laches, and that laches is not mere delay but delay that works disadvantage to another. *Calkins* v. *Wire Hardware Co.* 267 Mass. 52. *Stewart* v. *Finkelstone,* 206 Mass. 28, 36. The facts that might have been found by the judge warranted the conclusion of fact that the plain-

tiff's delay in enforcing its rights was not due to negligence and was not intentional, and warranted the further conclusion that the defendant suffered no legal harm by vacating the premises during the period of delay. See *Ryder* v. *Robinson*, 109 Mass. 67.

It results that the decree should be affirmed with costs.

*Ordered accordingly.*