GEORGE RIGS *vs.* MICHAEL SOKOL & another.

Middlesex.    April 4, 1945. — June 4, 1945.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Equity Jurisdiction,* Specific performance.    *Contract,* Liquidated damages, Construction, What constitutes, Option, Performance and breach, Sale of business, For lease.    *Tender.*

A contract for the sale of the fixtures, equipment and good will of a restaurant business and for the giving of a lease by the seller to the purchaser of the premises on which the business was conducted, where it was found that damages would not adequately compensate the purchaser for nonperformance by the seller, was of a nature to be specifically enforced by the purchaser.

Specific enforcement of a contract was not barred by a provision thereof for the payment of a penalty or liquidated damages in the event of nonperformance by one of the parties, unless such provision was intended by them as fixing a price to be paid for the privilege of nonperformance.

A provision of a contract for the sale of a restaurant business and for the giving of a lease, "that if either party . . . shall refuse to perform any of the conditions herein . . . or to perform . . . the said agreement, then the party refusing to do so shall pay to the other" a specified sum, was intended by the parties as security for the performance of the contract and not as fixing a price to be paid for the privilege of nonperformance.

Provisions of a writing giving an option to purchase a business and to obtain a lease were an irrevocable offer which, when seasonably accepted by the one having the option, ripened into a bilateral contract not lacking in mutuality.

Under a contract for the sale of a business providing for a certain payment on account by the purchaser upon delivery of a bill of sale by the seller, the purchaser was not required to make an actual tender of the payment on account in order to be entitled to specific performance of the contract; it was enough that he seasonably offered and demanded performance and that he was ready, able and willing to perform.

One, hired as a manager of a restaurant for a certain period under a contract giving him an option to purchase the business within that period, was not barred from obtaining specific performance of the owner's promise to sell through having committed a breach of the contract by failing to make an accounting to the owner once a week as required thereby, where it appeared that the manager kept proper books of account and that the owner "was satisfied with the way . . . [the restaurant] was being operated."

Specific enforcement of a contract for the sale of a restaurant business, providing among other things that the contract should terminate in the event of the purchaser's failing to obtain a liquor license, was not to be denied to the purchaser because of such a failure where it appeared that he did all in his power to obtain the license and that his failure was due to the seller's conduct in applying for and obtaining a renewal of his own license for the premises.

BILL IN EQUITY, filed in the Superior Court on December 15, 1944.

The suit was heard on a master's report and on demurrer by *Brogna,* J.

A portion of the contract of November 7, 1944, described in the opinion, was as follows: ". . . the said Michael Sokol and the said Josephine Sokol do hereby nominate and appoint the said George Rigs to be their manager in the operation of the said restaurant and cafe business beginning with the 11th day of November, 1944, and continuing up to and including December 31st, 1944. The said George Rigs is to manage and operate the said restaurant and cafe business in the name of and for the benefit of the said Michael Sokol and his wife, the said Josephine Sokol, during the said period of time above stated; the said George Rigs is to keep the said restaurant and cafe business open during the usual business hours; he is to give his personal attention to the management and operation of the said business; he is to order and purchase all foods, beers and wines used in the conduct and operation of said restaurant and cafe business; he is to hire all workers or employees needed in the management and operation of said restaurant and cafe business; he is to pay for all such foods, beers and wines and wages of such employees as he may hire and all other expenses from the proceeds of the said restaurant and cafe business or from his own personal funds; he is to keep proper and correct books of account . . .; he is to make an accounting on each Monday during said period of time, submitting to the said Michael Sokol a statement of all foods, beers and wines purchased and all employees hired or discharged during the preceding week, and all receipts taken in by the said restaurant and cafe business, and all bills and wages paid; he is to pay the said Michael Sokol on each Monday

during said period of time, the sum of $26 per week from the proceeds of the said restaurant and cafe business or from his own personal funds; and whatever balance there may be remaining after the payment of all bills for foods, beers, wines, wages of workers, and other expenses necessary in the operation of said restaurant and cafe business, he is to retain the same as and for his compensation and he is not to account for said balance. No rent is to be paid by said George Rigs during the time that he is such manager. It is understood and agreed that no other compensation is to be paid to the said George Rigs by the said Michael Sokol or his wife, the said Josephine Sokol."

*F. C. Zacharer,* (*C. A. Donahue* with him,) for the defendants.

*G. C. Eliades,* for the plaintiff.

SPALDING, J. This is a bill in equity to compel specific performance of an agreement to sell a business and to lease certain premises to be used in connection with it. The defendants in their answer included several matters by way of demurrer. The decision on this was reserved until after the case was heard on the merits — a practice that we recently said is permissible and sometimes wise for a judge to adopt. *Olszewski* v. *Sardynski,* 316 Mass. 715, 717. The case was referred to a master whose report (to which there are no exceptions) was confirmed by an interlocutory decree. The demurrer was then overruled by an interlocutory decree. A final decree was entered granting certain relief to the plaintiff, which will appear hereafter, from which the defendants appealed. Although no appeal from the interlocutory decree overruling the demurrer was taken, its correctness is open for consideration upon the appeal from the final decree. G. L. (Ter. Ed.) c. 214, § 27. *Gibbons* v. *Gibbons,* 296 Mass. 89. The issues raised by the demurrer will appear when we come to discuss the merits of the case.

The master found these facts: The defendants, husband and wife, for several years prior to the present controversy operated a restaurant in Lowell called the White Eagle Cafe on premises which they owned. (For convenience the husband will hereinafter be called Sokol.) This was oper-

ated pursuant to licenses granted by the licensing authorities of Lowell which included a license to sell beer and wine. In the fall of 1944, due to illness, the defendants were not able to carry on the business, and entered into negotiations with the plaintiff relative to the sale of it. On October 18, 1944, the plaintiff and the defendants executed a contract which provided among other things for a sale of the contents of the restaurant and a transfer of the beer and wine license to the plaintiff. The plaintiff paid Sokol $300 as a deposit on the contract. Thereafter the plaintiff informed Sokol that a beer and wine license could not be transferred in the manner called for in the contract, and a new contract under seal, which contained no provision for a transfer of the license, was drawn up and executed on November 7, 1944. By its terms the plaintiff agreed to manage the restaurant from November 11 to December 31, 1944, and to pay Sokol the sum of $26 a week, retaining whatever balance remained, after payment of expenses, as compensation for his services. The plaintiff had the right to purchase the fixtures and equipment of the restaurant, including the good will, for the sum of $4,000 at any time between November 11 and December 31. The $300 paid under the earlier contract was to be retained by the defendants as a payment on account and $1,700 was to be paid upon the delivery of a bill of sale from the defendants to the plaintiff. The balance of $2,000 was to be paid by a note payable in instalments and secured by a mortgage of personal property. The $1,700 and bill of sale were to be retained in escrow by an attorney of the defendants until the plaintiff obtained a beer and wine license. The contract gave to the plaintiff an option for a lease of the premises for a period of five years. It also contained a provision "that if either party . . . shall refuse to perform any of the conditions herein . . . or to perform . . . the said agreement, then the party refusing to do so shall pay to the other the sum of $500."

Upon the signing of the contract Sokol turned over the keys of the restaurant to the plaintiff who then commenced to operate it. On November 18, 1944, Sokol under the

name of Sokol & Co. filed an application with the Lowell
license board for the renewal of his victualler's and beer
and wine licenses at the White Eagle Cafe, and these
licenses were granted by the board on December 14, 1944,
and approved by the alcoholic beverages control commis-
sion two days later. Prior to this, on October 31, 1944,
the plaintiff had filed an application for a beer and wine
license but this was not acted upon because, as the board
informed the plaintiff, it was bound to renew Sokol's license
unless good reason could be shown why it should not do so.
Upon learning that Sokol was endeavoring to renew his
license, the plaintiff, prior to December 31, 1944, went to
him and protested and told him that he was ready to go
through with the contract. Sokol, having unsuccessfully
tried to persuade the plaintiff to take back the $300 deposit
and to call off the contract, then said that he would not
sell and ordered the plaintiff out of the restaurant. "No
reasonable cause was ever given . . . [by Sokol to the
plaintiff] for ordering him out of the . . . [restaurant] or
in refusing to go forward with the completion of the agree-
ment."

The master found that damages would not adequately
compensate the plaintiff for the refusal of the defendants
to perform the contract; and that although it was not
possible to determine accurately "the amount of money
and effort spent and devoted . . . [by the plaintiff to the
restaurant] it far exceeds $500."

The final decree ordered the defendants to execute a lease
of the premises and a bill of sale transferring the good will,
fixtures and personal property to the plaintiff, in return for
which the plaintiff was to pay the cash then due ($1,700)
and to deliver a note and mortgage for the balance, all of
which were to be held in escrow until the plaintiff was granted
or denied a beer and wine license for the premises from the
licensing authorities of the city of Lowell; it further ordered
that the defendants during the term of the lease "sign . . .
any and all forms, applications . . . assents and assign-
ments necessary to enable . . . [the plaintiff] to be granted
licenses . . . by the license board of the city of Lowell,"

and the defendants were enjoined from accepting any license for the year 1945 and from interfering directly or indirectly with the granting of one to the plaintiff by the licensing board; it contained the further provision that, if the plaintiff were not granted a license within a reasonable time, the instruments and deposits held in escrow were to be returned and the injunction was to become inoperative.

The decree was right.

1. The defendants contend that, since the contract provided for the payment of $500 in the event that either party refused to perform, the plaintiff had an adequate remedy at law; they also argue in effect that this provision gave the parties the privilege of either performing the contract or paying $500. These contentions cannot be sustained. In view of the finding of the master that damages would not adequately compensate the plaintiff and of the nature of the contract, it is one that may be specifically enforced. "It may be taken to be settled in this Commonwealth that the question whether a contract will or will not be specifically enforced depends upon the question whether the thing contracted for can be purchased by the plaintiff, and whether damages are an adequate compensation for a breach." *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 130. See *Sanford* v. *Boston Edison Co.* 316 Mass. 631, 634, 635; *Friend Brothers, Inc.* v. *Seaboard Surety Co.* 316 Mass. 639, 645. Furthermore, the plaintiff among other things is seeking specific performance of a covenant to give a lease. That such covenants may be specifically enforced is well settled. *Albiani* v. *Evening Traveler Co.* 220 Mass. 20, 25. *Judkins* v. *Charette,* 255 Mass. 76, 81. *Linden Park Garage, Inc.* v. *Capitol Laundry Co.* 284 Mass. 454, 460. Williston on Contracts (Rev. ed.) § 1419.

Nor is the provision in the contract for the payment of $500 in the event either party fails to perform a bar to specific performance. It is settled by our decisions and by the great weight of authority that the right to specific performance either affirmatively or by way of injunction is not lost because the contract contains a provision for the payment of a penalty or liquidated damages in the event of a

breach. *Dooley* v. *Watson,* 1 Gray, 414, 416. *Hooker* v. *Pynchon,* 8 Gray, 550, 552. *Ropes* v. *Upton,* 125 Mass. 258. *Morgan* v. *Forbes,* 236 Mass. 480, 485. *DeBlois* v. *Boylston & Tremont Corp.* 281 Mass. 498, 518. *Stewart* v. *Griffith,* 217 U. S. 323. *McCurry* v. *Gibson,* 108 Ala. 451. *Whitney* v. *Stone,* 23 Cal. 275. *Watrous* v. *Allen,* 57 Mich. 362. *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473. *Washington Cranberry Growers Association.* v. *Moore,* 117 Wash. 430. Am. Law Inst. Restatement: Contracts, § 378. Pomeroy, Eq. Jur. (5th ed.) §§ 446–447b. This result is reached on the assumption that the parties ordinarily contemplate that the contract be performed and that the provision for a penalty or liquidated damages in the event of a breach is intended as security for performance and not as a price for the privilege of nonperformance.

A contract, of course, may provide for the payment of a fixed sum as an alternative to performance. In such a case the promisor's election to pay the sum agreed upon will prevent specific performance of the other alternative. *Ropes* v. *Upton,* 125 Mass. 258, 260. *Amanda Gold Mining & Milling Co.* v. *People's Mining & Milling Co.* 28 Colo. 251. *Fisher* v. *Shaw,* 42 Maine, 32, 41. *Heckman's Estate,* 236 Penn. St. 193. Am. Law Inst. Restatement: Contracts, § 378, comment a. Pomeroy, Eq. Jur. (5th ed.) § 447. But whether such a provision is merely security for the performance of the contract or an alternative to its performance depends upon the intention of the parties to be deduced from the whole instrument and the circumstances. *Ropes* v. *Upton,* 125 Mass. 258, 260. *DeBlois* v. *Boylston & Tremont Corp.* 281 Mass. 498. *Diamond Match Co.* v. *Roeber,* 106 N. Y. 473, 486. *Wirth & Hamid Fair Booking, Inc.* v. *Wirth,* 265. N. Y. 214, 224. Fry, Specific Performance (6th ed.) §§ 153–164. We are of opinion that the contract under consideration contemplated that it was to be performed and that the provision for the payment of $500 was intended as security for its performance and not as a price for the privilege of nonperformance.

2. The defendants further contend that the plaintiff is not entitled to specific performance because portions of the

contract, namely, those that gave the plaintiff options to purchase the business and to obtain a lease, were lacking in mutuality. There is no merit in this contention. These provisions constituted an irrevocable offer by the defendants to the plaintiff which ripened into a bilateral contract when, as the master found, the plaintiff accepted it. There was therefore no lack of mutuality. It is settled that in these circumstances a contract can be specifically enforced. *O'Brien* v. *Boland,* 166 Mass. 481, 483. *Boston & Worcester Street Railway* v. *Rose,* 194 Mass. 142, 149. *Forman* v. *Gadouas,* 247 Mass. 207, 214. Williston on Contracts (Rev. ed.) § 1441. Am. Law Inst. Restatement: Contracts, § 372. The defendants are adequately protected by the terms of the final decree and do not have to perform unless they receive the quid pro quo promised in the contract. See *Western Railroad* v. *Babcock,* 6 Met. 346, 353, 354; *Mansfield* v. *Hodgdon,* 147 Mass. 304, 308.

3. It was not necessary that the plaintiff make an actual tender of the balance of the down payment to entitle him to performance of the contract by the defendants. The obligation of the plaintiff to pay and that of the defendants to deliver the instruments called for in the contract were concurrent and mutually dependent. The master found that the plaintiff offered and demanded performance within the time specified in the contract and that he was ready, able and willing to carry out his part of the transaction. This was all that the law requires. *Irvin* v. *Gregory,* 13 Gray, 215, 218. *Hunt* v. *Bassett,* 269 Mass. 298.

4. The defendants urge that specific performance should be denied in view of the findings of the master that the plaintiff failed to make an accounting once a week as required by the contract. There were also findings that the plaintiff kept proper books of account and that Sokol "was satisfied with the way . . . [the restaurant] was being operated." This breach is too trivial to require action by a court of equity to defeat the claim of the plaintiff. *Massachusetts Home Missionary Society* v. *Sirianni,* 252 Mass. 352. *Sanders* v. *Bryer,* 152 Mass. 141, 142.

5. It is argued that the contract is illegal in that it con-

templated the sale of a liquor license contrary to G. L. (Ter. Ed.) c. 138, § 23, inserted by St. 1933, c. 376, § 2. The short answer to this is that the contract contains no such provision. We do not intimate that if it did it would be illegal. See St. 1943, c. 542, § 12, amending G. L. (Ter. Ed.) c. 138, § 23, which provides that liquor licenses may be transferred if in the opinion of the licensing authorities such transfer is in the public interest. Compare *Jubinville* v. *Jubinville,* 313 Mass. 103, 106, construing the law prior to the amendment.

6. The contract contained a provision that, in the event the license commission of the city of Lowell should not grant a beer and wine license to the plaintiff for the year 1945, then the contract was to come to an end and the deposit was to be returned to the plaintiff. The defendants argue that since the plaintiff never obtained such a license the rights and obligations of the parties under the contract have ceased. It does not lie in the defendants' mouths to make this contention. It is fairly to be inferred from the findings of the master that the plaintiff did all within his power to procure a license for 1945, and that his failure to obtain it was attributable to the conduct of Sokol in applying for and obtaining a renewal of his license covering the same premises. It would be contrary to fundamental principles of justice to allow the defendants to reap any advantage from the plaintiff's noncompliance with this condition in these circumstances. *Mansfield* v. *Hodgdon,* 147 Mass. 304, 307. See *DeBlois* v. *Boylston & Tremont Corp.* 281 Mass. 498, 507; Williston on Contracts (Rev. ed.) § 677; Am. Law Inst. Restatement: Contracts, § 295.

What has been said disposes of the questions raised by the demurrer; it was properly overruled. Questions argued by the defendants but not discussed in this opinion have not been overlooked. We find nothing in them that requires discussion.

*Interlocutory decree overruling demurrer affirmed.*
*Final decree affirmed with costs.*