Shubow, J.
Before the court are two Reports arising from the consolidated trial[2] in the Attleboro Division of controversies arising from the sale of real estate by one Marsman. Although the interests of the appealing parties are disparate, the circumstances in each controversy constitute a single historical continuum, and one opinion will better serve to make the claims and the court’s resolution of them intelligible.
Plaintiff Wesley sought, among other things not presently pertinent, to recover a real estate deposit in the amount of Seventy-Five Hundred Dollars ($7,500). She relied (Count I) on a purchase and sales agreement dated July 16, 1979, which provided for a sale price of $79,900. and included a contingency that the broker aid her in obtaining (within sixty days) a bank mortgage in the sum of $61,900. Financing became available (on or about September 6, 1979) only in the sum of $38,000. Thereafter, there were negotiations looking toward the seller (Marsman) taking back a second mortgage. These never ripened into a formal new written purchase and sales agreement. Nor did the plaintiff herself pursue further efforts to obtain financing. In the meantime, the plaintiff became a tenant of the defendant. On December 10, 1979, she made demand for return of her deposit and subsequently abandoned her lease. Thereafter, the seller ultimately sold the premises to new buyers (Fonseca and Grace)[3] for $70,000.
In his answer, the defendant denied that the plaintiff was entitled to return of the deposit and counterclaimed for breach of the lease as well as impleading one Lake, a real estate agent.
The trial court found for the plaintiff in the amount of $3,193 and for the *74 defendant, as plaintiff in counterclaim, for $650, the net finding for the plaintiff being in the amount of $2,543.
So far as can be discovered from the voluminous papers filed by the plaintiff, her only claim now is for recovery of her full deposit. Marsman does not complain here about any action of the court adverse to him (including the disallowance of his first counterclaim, and the finding against him in this third party action against Lake). Nor has Lake appeared to complain about the court’s finding against her on her counterclaim.
The trial court concluded that the plaintiff had by her conduct waived any entitlement to return of her deposit. The judge went on sua sponte to determine that the liquidated damages clause of the purchase and sales agreement was an unlawful penalty, deducted from the $7,500, the actual damages found to have been suffered by Marsman as a result of the plaintiffs failure to consummate the original purchase and ordered the balance of the deposit returned to the plaintiff presumably because to do otherwise would have left the defendant unjustly enriched.[4]
The Report indicates the plaintiff claimed to be aggrieved by rulings on her requests numbered 1, 2, 4, 5, 6,11,12,13,14, 16, 22, and 23, and the findings made under Rule 52, and rulings and findings of fact under Rule 59.
“Clearly the defendant cannot be heard to complain that its requests for rulings were granted and we need not consider whether these rulings were fight.” Korb. v. Albany Carpet Cleaning Company, 301 Mass. 317, 318 (1938). Accordingly, we do not pause to consider Requests numbers 1,4, 5, 6,11,14, and 15, which the trial judge allowed. The remaining requests, the trial court’s action thereon, and our views of the action of the trial court are as follows:
2; The evidence does not warrant a finding that a contract was entered into between Plaintiff and Defendant subsequent to the contract of July 16,1979 for the purchase and sales of the premises. Court:
DENIED. I find that the parties modified the terms of the original contract.
We take the court’s action to be a ruling that the ruling sought was immaterial. No party was relying on the existence of any such contract and judge’s ruling was correct.
12. The misrepresentation as to zoning in the contract of July 16,1979 caused Plaintiff to pay rental in excess of the fair market value.
Court:
DENIED.
This subject has not been briefed by the plaintiff and forms no part of her present contentions. The opening assertion of her brief is that she “has limited her appeal to the matters concerning the disposition of the down-payment made by Plaintiff to Defendant on July 16,1979 in the amount of $7,500.00.” We guide ourslves accordingly and pass over this Request presenting an issue that has not been briefed. See Dist./Mun. Cts.' R. Civ. P., Rule 64(f): “ . . . The *75 appellate division need not pass upon questions or issues not argued in briefs.”
13. The plaintiff reasonably relied on the misrepresentations in the contract of July 16, 1979 in making substantial improvements and the Defendant was unjustly enriched thereby.
Court:
DENIED.
What has been said in connection with Request Number 12 fully applies to this Request. Moreover, the court’s ultimate finding reflects the trial judge’s effort to avoid any untoward “enrichment” and may well have been more favorable to the plaintiff than was indicated under all the circumstances.
16. The Plaintiff reasonably relied upon the misrepresentations in the contract of July 16, 1979 in entering into a lease of the premises to take occupancy before the closing scheduled for February 1,1980. Court:
DENIED.
Once again, any issue presented by this Request has not been briefed. Furthermore, we are unable to perceive how the plaintiffs action for return of her deposit is affected by this Ruling.
22. Because of the condition of the premises from October 1,1979 and during the lease Plaintiff was unable to use the kennels to operate a going business, boarding and grooming animals.
Court:
DENIED.
The court’s action in denying this palpably immaterial Request does not warrant discussion presenting, as it does, primarily a question of fact.
Request No. 23 was likewise addressed to problems during the period of leasing and is outside the scope of this appeal.
The plaintiff also claims to be aggrieved by the court’s further findings made in response to her motion for additional findings. But she does not assert and has not sought a ruling that the findings made were not warranted on the evidence. Findings are challengeable only as they arise from erroneous rulings of law made in response to a properly framed Request. Language in Reid v. Doherty, 273 Mass. 388, 389 (1930) is apt here:
The trial judge found that the plaintiff had waived his right to claim damages for breach of contract. .. ; and the chief contention of the appellant is that there was error in the finding in that it was not supported by the evidence. The contention is not open to him. The only matters brought before the Appellate Division by the report were the propriety of rulings with regard to the interpretation of the contract and the legal effect of failure on the part of the defendant to deliver stock at the time fixed by the contract. All the requests were rendered immaterial by the finding of waiver. The question of waiver is one of fact... Its determination was for the trial judge, and there is no appeal from his finding of fact. If the plaintiff desired to raise the question of law, whether the evidence would support a finding of waiver, he should have presented a request for a ruling and asked a report to that end.
Moreover, we do not hesitate to add that from the facts set out in the Report, albeit in less than crystalline form, it was open to the trial judge to infer that the plaintiff had lost the right she may have originally had to return of her deposit. See Sechrest v. Safiol. Mass. Adv. Sh. (1981) 1150, 1153, n.4. There is nothing to suggest that the seller was not ready at all pertinent times to *76 convey. The plaintiff was under an obligation to show that she was “ready, able and willing to perform” (see Leigh v. Rule, 331 Mass. 664, 668 [1954]), and that no act or failure to act of hers frustrated consummation of the transaction. Compare Rigs v. Sokol, 318 Mass. 337, 345 (1945).
Since neither party has been heard to object to that part of the court’s decision which results in a partial recovery by the plaintiff, we shall not express any opinion thereon.
On this aspect of the case, the trial judge’s decision has not been shown to contain any error.
We turn to the claim of Diamond Realty Corporation (Appellate Division No. 358).
The plaintiff corporation, a real estate broker, sought (a) payment from the seller Marsman based on a provision of the purchse and sales agreement referred to in Case No. 357 which provided that in the event of a default by the buyer the real estate broker would be entitled to one half of any deposit retained by the seller, and (b) for a commission for its services in producing the buyer (Fonseca and Grace) to whom Marsman ultimately sold his property. The complaint was in four Counts. Count I (as amended) alleged that the defendant retained a deposit of $7,500 when the buyer defaulted and that the default provision of the purchase and sales agreement entitled the plaintiff to one half of the retained deposit. Count II sought payment for services rendered in quantum meruit. (Counts I and II dealt with the Wesley agreement.) Count III alleged that the plaintiff brought about an agreement between Marsman and buyers named Fonseca and Grace. That agreement called for a $2,000 broker’s fee. The property was sold to the buyer produced by the plaintiff and the plaintiff thereby became entitled to the fee. Count IV seeks payment for that sale in quantum meruit.
The court found against the plaintiff on Counts I, II and IV, and for the plaintiff in part on Count III. The action of the trial court in rejecting counterclaims against the plaintiff broker is not before us.
The plaintiff seeks review of the following four rulings. On each ruling we concede that the trial court’s action was correct on the basis of the facts found by the judge, or when not wholly in accordance with our view, more favorable to the plaintiff than was strictly called for.
(Wesley tranaction)
4. The the Purchase and Sale Agreement dated July 16, 1979 contained a Liquidated Damages Provision, (sic) entitling Diamond Realty Corp., to one-half (1/2) of any deposit retained by the Seller (Marsman), that the Purchaser (Wesley) defaulted; that the Seller (Marsman) kept the deposit of $7,500.00, and the Broker (Diamond) is entitled to one-half (1/2) of same.
The court’s action on the request was to allow it “except for the conclusion”. We consider the court’s action a denial of the request. The court added a memo: “I find that the brokers were negligent in their attention to detail, and that the negligence contributed substantially to the termination* of the agreement. I further find that the brokers did not earn a commission.”
The report reformulates the legal issue presented by this request as follows (p. 3): “In effect, that request asked the judge to rule that: ‘A finding for the Plaintiff is required in the amount of $3,750.’ ” As so formulated, the judge’s ruling was not incorrect. We turn in vain to find in the Report, as mandated by sound practice under Dist./Mun. Cts. R. Civ. P., Rule 64(c), and Form 33, “a clear and concise statement of so much of the evidence or of any agreed *77 statement of facts as may be necessary to present the questions of law reported.”
The Report embodies either in terms or by incorporation nineteen allowed requests for findings of fact, additional findings in the judge’s decision and memoranda, and the findings in the companion case. The Report contains this comprehensive assertion “There was evidence presented at trial tending to show all of the facts as found by the judge in both cases and, as such, intended hereby to be incorporated into this part of this report.” The broad invitation to treat all facts found as established by the evidence is then partially withdrawn in the words “Specifically excluded from incorporation here by the above reference are my facts which maybe gleaned from the following two findings: ‘I find that the brokers were negligent. .. did not earn a commission’and T find that the “liquidated damages” clause to be unreasonable and a penalty.’ " Nowhere has the plaintiff sought a ruling that the facts found by the judge were not warranted on the basis of the historical circumstances disclosed in the evidence. The underlying question is whether or not a broker found on the evidence to have been at least partially responsible for the breakdown of a purchase and sale agreement may enforce a provision of the agreement in his favor. The general rule is that one who frustrates the carrying out of an agreement cannot benefit from its terms. See Rigs v. Sokol, 318 Mass. 337, 345 (1945). See RESTATEMENT OF CONTRACTS (SECOND) §237. This fundamental principle is analytically akin to the doctrine of mitigation of damages. See Burnham v. Mark IV Holmes, Inc. 387 Mass. 575, 586 (1982).
Nor can a broker enforce a contract where his own conduct inhibited fulfillment of the purpose for which he was employed. See Ebert v. Haskell, 217 Mass. 209, 211 (1914). On the warranted finding that the defendant’s loss was due in part to the plaintiff, it could be incongruous in the extreme to permit the plaintiff to recover at the price of leaving the defendant’s damage substantially unrepaired. Compare Welch v. Williams, 237 Mass. 373 (1921); Spritz v. Brockton Savings Bank, 305 Mass. 170, 172 (1940); and Gaynor v. Laverdure, 362 Mass. 828, 835 (1973). The broker, as fiduciary, owed a duty to disclose to his principal all facts material to the transaction. Turner v. Guy, 2 Mass. App. Ct. 343, 347 (1974). The Report discloses the brokers involved decided to do nothing between September 8,1979, and sometime in October at a time when “both Buyer and Seller presumed that the Broker would finalize the terms” of new financing (p. 6).
Finally, the situation here must be contrasted with that discussed in Macurdy v. Carver, 328 Mass. 434 (1952). The court has found there was no “kept” or “retained” deposit. However challengeable this finding may have been, it was not challenged. See Reid v. Doherty, supra, p. 389.
(Fonseca-Grace transaction)
Denials of requests for rulings No. 3, 4, and 7 are challenged.
3. On July 22,1980, Philip L. Marsman, conveyed the premises subject to the March 10, 1980, Agreement to Fonseca and Grace upon the same terms or substantially the same terms as contained in the March 10,1980, Agreement which named Diamond Realty Corp., as Broker due a commission.
4. A sale was actually consummated between the Seller and Purchasers procured by the Broker, upon the same terms or substantially the same terms, as contained in the written Agreement brought about by the Broker (Diamond) and therefore all of the prerequisites for earning a commission as set out in the case of Tristram’s *78 Landing, Inc. v. Wait, 327 N.E.2d 727, 367 Mass. 622 (1975) were met. 7. That Diamond Realty Corp., is entitled to a fee or commission of $2,000.00, with respect to the Agreement dated March 10, 1980, payable by Philip L. Marsman, or in the alternative, is entitled to recovery against Philip L. Marsman, in the amount of $2,000.00 for services and expenses on a theory of quantum meruit.
The issue is disposed of by the findings of fact that the buyer was unwilling and unable to perform upon the terms originally negotiated [Tristram’s Landing, Inc. v. Wait, 367 Mass. 622, 625 (1975)], that the broker “contributed substantially” to the non-performance of the initial agreement and that the agreement actually consummated by the buyer and seller “differed in substance” fom the first agreement brought about directly by the plaintiff broker.
Neither party raises a challenge to the trial court’s decision to award $ 1,000 to the plaintiff broker upon the ground that the seller Marsman gratuitously waived his right to retain the $2,000 deposit provided for in the original agreement, one half of which the broker would conceivably have been entitled to. We, therefore, have no occasion to disturb it.
There being no error established in the case as presented to us, the Reports are dismissed.

It has been said that the better practice would be for the parties to have participated in preparation of a consolidated report. See Sarault v. Baia, 13 Mass. App. Dec. 195, 6196 (1967). However, in that case the Reports each contained the same requests for rulings of law, which is not the situation here. This is an appropriate point to mention that neither Report under consideration follows the provisions of Rule 64(c)(2) governing the contents of the Draft Report nor makes good use of the model Report printed as Form 33 in the appendix of Forms attached to the DistVMun. Cts. R. Civ. P. Resort to the Rule and the Form will aid the parties (and the court) in focusing on the precise errors of law of which review is sought.

That sale engenders, in part, the controversy arising in Case #368 treated below.

The trial judge, responding to a motion seeking amended findings, further found as follows:
“In relation to the actual damages of $4,307,1 find that the sales price was $79,900. with a brokers’fee of $5,693; and that the defendant subsequently sold the property for $70,000. without any broker’s fee.”
It is clear that the judge subtracted $5,693 from the original price of $79,900. yielding the figure $74,307 as the net sum the defendant expected to receive if his agreement with the plaintiff had been consummate*!. The judge found the plaintiff responsible for the loss resulting from the subsequent sale of $70,000 and ordered the return to the plaintiff of the excess of her deposit above the defendant’s loss further reduced by the defendant’s successful counterclaim.