Zobel, J.
Plaintiffs and Defendants executed an agreement (“the Agreement”) dealing with defendants’ placing certain waste on plaintiffs’ premises. The Agreement affords defendants a choice: put (i.e., dump) between 213,500 and 219,500 tons of “Acceptable Waste” annually, or pay a fixed-price “tipping fee” for each ton below the 213,500 minimum.
Does the Agreement afford defendants a true choice in the Holmesian sense, that is, an opportunity to elect between (a) satisfying a contractual obligation and (b) paying a predetermined amount of liquidated damages, see Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 543 (1903)?Ifhowever, the Agreement does not offer this choice, does it impose a penalty, bearing no relation to the aggrieved party’s actual loss?
The parties have agreed to assume for present purposes that defendant unjustifiably refused to deliver [Ptf. Memo. 2). Now they ask the Court to determine whether, assuming plaintiffs’ right to some amount of damages, defendants are entitled to credit for whatever sums plaintiffs may have obtained byway of tipping fees from substitute suppliers of waste. That is, the Court must decide whether plaintiffs are bound to mitigate their damages or, instead, whether they are entitled to the full amount. It is here that the clash of liquidated damages versus penalty requires resolution.
Penalty clauses find disfavor, Shapiro v. Grinspoon, 27 Mass.App.Ct. 596, 605 (1989); Belgelfer v. Najarian, 381 Mass. 177, 186 (1980), and courts hesitate to confer unfair windfalls; A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 675 (1956). When, however, husky corporate entities, apparent economic peers, well-represented by counsel, first negotiate at arms’ length, then draft and execute a detailed, comprehensive long-range contract, a court should be slow to remake the parties’ bargain, Lynch v. Andrew, 20 Mass. App.Ct. 623, 627 (1985).
The distinction between penalties and liquidated damages lies in the relation between the contractually-stated amount and plaintiffs loss, Manganaro Drywall, Inc. v. Penn-Simon Construction Co., 357 Mass. 653, 658 (1970). On the other hand, the contract may merely embody a monetary aspect of the overall transaction. What at first seems a penalty or even a windfall could in fact represent bargained-for consideration, Riggs v. Sokol, 318 Mass. 337, 343 (1945). Is the figure anticipatory reparation for loss, or is it a commercial pheromone that helped bring the parties into a contractual relationship?
Plaintiffs here candidly concede (Pltf.Memo. 7) that the so-called “put-or-pay” clause sought to ensure the steady income stream which lending institutions encourage borrowers to demonstrate. On this view, plaintiffs feared that the market cost of dumping might fall, whether from the proliferation of suitable sites or otherwise, thus driving down “tipping fees” and consequently tempting dumpers like defendants to take their business and their waste elsewhere.
Defendants correlatively worried that dumping costs would rise, either from inflation or from diminution in the number of available sites.
To meet these opposed concerns the parties apparently devised an arrangement to assure plaintiffs a steady cash flow and defendants a fixed-price dumping site, thus rendering everyone immune to changing market conditions.
Of course, the plan does not offer defendants the “true alternative” that courts look for in the analogous “take or pay” situation, Superfos Investments v. FirstMiss Fertilizer; Inc., 821 F.Supp. 432, 439-40 (S.D. Miss. 1993). There, unless the buyer receives credit against future purchases for money paid earlier, i.e., for “paying” instead of “taking,” the contract does not afford a “true alternative,” because the seller is “relieved of any duly to perform if the buyer were to elect the alternative of paying but not taking any product,” id. at 440.
Here, however, the parties manifestly intended not to grant each other alternative performances, nor even to establish in advance the cost of nonperformance. Rather, they sought to damp the economic risks of an *446 uncertain future. Each one’s undertaking, like any-hedging mechanism (or for that matter, any insurance purchase), was a wager that certain circumstances would — or would not — eventuate. Although, as it happened, plaintiffs’ crystal ball contained fewer cracks than defendants’, a court should not penalize one party for having more correctly divined the future, given that the contract provided each participant an equal opportunity to benefit from the fixed-payment arrangement.
At the time they entered the contract, the parties could not know whether “paying” would prove as desirable as “putting”; thus the contract gave defendants a true alternative, cf. Superfos Investments v. FirstMiss Fertilizer, Inc., supra, at 439.
Defendants argue, however, that at the time the parties executed the Agreement, had they looked ahead to the possibility of a future breach, they ought reasonably to have contemplated a simplified determination of damages: the contract tipping fee, less whatever plaintiffs might receive as mitigation, i.e., fees from substitute dumpers. Ease of determining likely future damages is one of the facts whose presence causes courts to deny that a clause is not a penalty, Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1289-90 (7th Cir. 1985).
The tipping price here does not appear to have been determined by reference to plaintiffs’ costs. That is, the facility’s readiness to receive fill remains constant, without incremental expense tied to use or non-use. Thus damages result not from unrecovered expenses, but rather from unused capacity and inability to use anticipated (but undelivered) fill.
Thus we come back to the manifest purpose of the put-or-pay clause. It sought not to provide a remedy for future breaches, nor to penalize defendants for failing to perform, but only to ensure an even cash flow and a certainty of dumping-site availability. Because, by their own candid admission, plaintiffs looked to the clause to ensure that their income did not drop below a predictable level, they may not reasonably expect to receive more than the amount they anticipated. Thus defendants are entitled to credit against the established tipping fee whatever sums plaintiffs obtained from tipping fees or the equivalent from any other entity supplying fill to plaintiffs’ premises.
ORDER
Accordingly, it is Ordered and Declared, that Defendants’ Motion for Partial Summary Judgment be, and the same hereby is, Allowed, and that partial Summary Judgment enter forthwith as follows:
The amount of damages to which plaintiffs are entitled is the sum of the annual tipping fee or fees during the life of the Agreement between the parties herein dated January 1, 1987, less whatever amount plaintiffs may have received or will receive from third parties on account of tipping fees or the like since defendants’ breach of the said Agreement.
And it is Further Ordered, that plaintiff Ogden Haverhill Associates’ Cross-Motion for Partial Summary Judgment be, and the same hereby is, Denied.